**COMMONWEALTH of Pennsylvania,
Appellant**

v.

**Joseph Bradley RATHFON, Appellee.**

Superior Court of Pennsylvania.

Submitted Feb. 13, 2006.

Filed May 9, 2006.

---

William T. Fullerton, Asst. Dist. Atty., Butler, for Com., appellant.

Kenneth R. Harris, Jr., Butler, for appellee.

BEFORE: HUDOCK, BENDER and TAMILIA, JJ.

OPINION BY BENDER J.:

¶ 1 The Commonwealth appeals from the July 19, 2005 order granting in part the petition filed by the defendant, Joseph Bradley Rathfon, pursuant to the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541–46 (PCRA). The Commonwealth argues that the PCRA court erred by granting PCRA relief to Rathfon and allowing him to withdraw his guilty plea to the charge of corruption of minors. The PCRA court, in finding ineffective assistance of counsel, concluded that Rathfon had entered into a plea agreement in reliance on his plea counsel's misapprehension that his sentence would be served in a county facility, rather than a state facility. However, it was later established that Rathfon's sentence would be aggregated consecutively to a state prison sentence he was currently serving on unrelated crimes, thereby making him statutorily ineligible to serve his sentence in the county jail. The record supports the PCRA court's decision that, had Rathfon known that he would not have been eligible to serve his sentence in the county jail, there was a reasonable probability that he would not have pled guilty. Accordingly, we affirm the PCRA court's order.

¶ 2 A brief history follows. On April 11, 2002, Rathfon, a man in his late forties, was charged with corruption of minors and indecent assault for making inappropriate comments to a fourteen-year-old girl in his neighborhood, kissing her, and grabbing her breasts, until she was able to break away and flee to her residence. On October 8, 2003, while represented by public defender Charles Nedz, Esq., Rathfon entered into a written plea agreement whereby he would plead guilty to corruption of minors, with a recommended sentence of incarceration of 9 to 18 months. A box on the plea agreement indicating "county," was checked, giving rise to the implication that the agreed-upon term of incarceration constituted a county sentence. Plea Agreement, 10/8/03. Rathfon also initialed

and signed a detailed written plea colloquy. Guilty Plea Colloquy, 10/8/03.

¶ 3 At the guilty plea hearing, held on the same date, the Commonwealth recommended to the court, *inter alia,* a "period of incarceration of nine months to 18 months in a county facility[.]" N.T. Guilty Plea Hearing, 10/8/03, at 2. The Honorable Marilyn J. Horan, of the Court of Common Pleas of Butler County, conducted an extensive oral colloquy with Rathfon. Rathfon indicated his understanding, *inter alia,* that the maximum possible prison term in his case for corruption of minors was five years. *Id.* at 4. Rathfon also agreed that, in exchange for his plea, the offense gravity score would be reduced from five to four and the indecent assault charge would be dismissed. *Id.* at 7–8. He also agreed that the recommended sentence of 9 to 18 months was within the standard sentencing range. *Id.* at 8.

¶ 4 As noted above, at the time of the proceedings in the instant case, Rathfon was serving a sentence in a state prison facility for prior crimes. Apparently, at the time of the guilty plea hearing in the instant case, no one recognized that Rathfon would not be able to serve his 9 to 18 month sentence in the county jail because, statutorily, under 42 Pa.C.S. § 9757 ("Consecutive sentences of total confinement for multiple offenses"), and 42 Pa.C.S. § 9762 ("Sentencing proceeding; place of confinement"), along with certain policies of the Department of Corrections (DOC), discussed further *infra,* Rathfon's sentence would be aggregated consecutively with his state prison sentence previously imposed. The result was that he would have to serve the *entire* sentence, including that

imposed in the instant case, in a state prison.[1]

¶ 5 At sentencing before Judge Horan, on November 25, 2003, the Commonwealth reiterated the terms of the plea agreement including its recommendation that the court impose "a term of incarceration of 9 to 18 months in the county facility[.]" N.T. Sentencing, 11/25/03, at 2. The court sentenced Rathfon in accordance with the recommendation in the plea agreement, and committed Rathfon to the "custody of the Butler County Prison." *Id.* at 3. The sentencing order further indicated that the sentence would run consecutive to any other sentences previously imposed. Again, at this point in time, the fact that Rathfon would not be able to serve the instant sentence in a county facility remained unrecognized. However, seven months after sentencing, the issue finally came to Rathfon's attention when, on June 25, 2004, the DOC aggregated Rathfon's sentence in the instant case with the state sentence previously imposed, resulting in Rathfon having to serve both sentences in a state prison.

¶ 6 On October 5, 2004, Rathfon filed a grievance petition with the DOC with regard to the aggregation of his county sentence with his state prison sentence. The DOC issued a report in response, dated October 15, 2004, in which it found no merit to Rathfon's complaint, stating, in pertinent part, that the:

> aggregate computation is in accordance with established DOC policy directives. In fact, current Department directives [at] Policy 11.05.01 actually require the records office to aggregate all consecutive commitments with any previously-imposed state commitments that the subsequent commitments are consecu-

---

1. *See, e.g., Commonwealth v. Harris,* 423 Pa.Super. 190, 620 A.2d 1175, 1178–79 (1993) (indicating that Pennsylvania Board of Probation and Parole, not trial court, has exclusive parole jurisdiction when consecutive county sentences are aggregated under 42 Pa.C.S. § 9757, resulting in minimum term exceeding two years).

tive to, and this requirement holds even for those consecutive sentences that may have been specifically designated by the Court for county prison.

As the file copy of the sentencing order clearly indicates that Judge Horan specified that the sentence [in the instant case] is to "run consecutive to any other sentences issued prior to this [sentencing] date," the commitment is aggregated accordingly with the previously-imposed state commitments. Under current procedures for aggregation, the sentences are added together to form a single state commitment for purpose of parole eligibility and maximum term, and consequently, authority for parole is transferred to the [Pennsylvania Board of Probation and Parole].

DOC Response to Inmate Grievance, 10/15/04. In addition to relying on DOC policies, the report further indicated that 42 Pa.C.S. §§ 9757 and 9762(3) supported its decision. *Id.*

¶ 7 According to the docket, on November 29, 2004, Rathfon filed a *pro se* PCRA petition asserting ineffective assistance of plea counsel for, *inter alia,* failing to notify him "that sentencing laws prohibit consecutive county sentences after service of state sentence[.]" PCRA petition, 11/29/04, at 3. On December 10, 2004, court-appointed attorney Kenneth R. Harris, Esq., entered his appearance on Rathfon's behalf.

¶ 8 Attorney Harris filed an amended PCRA petition on January 28, 2005. In the amended PCRA petition, Rathfon asserted that his guilty plea was not made knowingly or intelligently because he pled guilty under the mistaken belief that he would be incarcerated in the county jail for the sentence in the instant case. Amended PCRA Petition, 1/28/05, at ¶¶ 8, 10(b), 10(d). He asserted that plea counsel provided ineffective assistance and that his plea was unlawfully induced. *Id.* at ¶ 9.

¶ 9 On July 12, 2005, the Honorable William R. Shaffer of the Butler County Court of Common Pleas, held a hearing on Rathfon's PCRA petition. Attorney Harris argued that plea counsel was ineffective, resulting in an involuntary and unknowing plea, because Rathfon "entered into . . . a plea of nine to eighteen months in the county institution and what he got was an aggregated state sentence meaning he will serve his time in a state facility." N.T. PCRA Hearing, 7/12/05, at 5–6. He argued that Rathfon's plea was conditioned upon him receiving a county sentence. *Id.* at 8–9. Attorney Nedz testified first at the PCRA hearing. He stated that Rathfon had bargained for a county sentence. *Id.* at 12. Rathfon also testified, stating that he would not have entered into the plea had he known that he would not be able to serve the sentence in the instant case in a county facility. *Id.* at 23. Thus, Rathfon sought to withdraw his guilty plea. *See* PCRA Court Opinion, 7/19/05, at 2. The PCRA court allowed Rathfon to withdraw his guilty plea on this basis. *Id.* at 5. The Commonwealth filed the instant appeal from that portion of the PCRA court's July 19, 2005 order allowing Rathfon to withdraw his guilty plea.[2]

■■■ ¶ 10 "Our standard in reviewing a PCRA court order is abuse of discretion.

---

**2.** In his PCRA petition, Rathfon also raised a challenge to the credit granted to him for time served. The PCRA court rejected this claim. Although Rathfon initially filed a cross appeal to that portion of the PCRA order, he withdrew his appeal. All that remains before us is the Commonwealth's appeal challenging that portion of the PCRA order that allowed Rathfon to withdraw his plea pursuant to ineffective assistance of plea counsel for failing to inform Rathfon, in accordance with 42 Pa.C.S. §§ 9757 and 9762, that his whole sentence would be served in a state prison.

We determine only whether the court's order is supported by the record and free of legal error." *Commonwealth v. Battle,* 883 A.2d 641, 647 (Pa.Super.2005). "This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding." *Commonwealth v. Hickman,* 799 A.2d 136, 140 (Pa.Super.2002). We will not disturb the PCRA court's findings unless the record fails to support those findings. *Id.*

 ¶ 11 "A criminal defendant has the right to effective counsel during a plea process as well as during trial." *Id.* at 141. "A defendant is permitted to withdraw his guilty plea under the PCRA if ineffective assistance of counsel caused the defendant to enter an involuntary plea of guilty." *Commonwealth v. Kersteter,* 877 A.2d 466, 468 (Pa.Super.2005).

We conduct our review of such a claim in accordance with the three-pronged ineffectiveness test under section 9543(a)(2)(ii) of the PCRA, 42 Pa.C.S.A. § 9543(a)(2)(ii). *See [Commonwealth v.] Lynch*[, 820 A.2d 728, 732 (Pa.Super.2003)]. "The voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Id.* at 733 (quoting *Commonwealth v. Hickman,* 2002 PA Super 152, 799 A.2d 136, 141 (Pa.Super.2002)).

In order for Appellant to prevail on a claim of ineffective assistance of counsel, he must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. *Commonwealth v. Kimball,* 555 Pa. 299, 724 A.2d 326, 333 (Pa.

1999). Appellant must demonstrate: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. *Id.* The petitioner bears the burden of proving all three prongs of the test. *Commonwealth v. Meadows,* 567 Pa. 344, 787 A.2d 312, 319–20 (2001).

*Commonwealth v. Johnson,* 868 A.2d 1278, 1281 (Pa.Super.2005).

*Kersteter,* 877 A.2d at 469–69. Moreover, trial counsel is presumed to be effective. *Commonwealth v. Carter,* 540 Pa. 135, 656 A.2d 463, 465 (1995).

¶ 12 In both *Kersteter* and *Hickman,* which the PCRA court relied upon to grant relief in the instant case, the defendants pled guilty in reliance on plea counsels' erroneous advice that they would be eligible for boot camp when, in fact, the length of their sentences statutorily precluded the possibility of their participation in boot camp. Both defendants sought PCRA relief, asking to withdraw their pleas based on ineffectiveness assistance of counsel. In both cases, we concluded that counsels' erroneous advice fell below the standard of competence required by the Sixth Amendment, that there was no reasonable basis designed to advance the defendants' interests, and that the erroneous advice prejudiced the defendants because it enticed them to plead guilty when they would not have otherwise done so. *See Kersteter,* 877 A.2d at 467 (discussing analogous *Hickman* case).

¶ 13 With regard to prejudice, in *Hickman,* we noted that "[t]o succeed in showing prejudice, the defendant must show

that it is reasonably probable that, but for counsel's errors, he would not have pleaded guilty and would have gone to trial. *The 'reasonable probability' test is not a stringent one."* *Hickman,* 799 A.2d at 141 (citations omitted; emphasis added). The Court in *Hickman* derived this standard from *Nix v. Whiteside,* 475 U.S. 157, 175, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986), which held that "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome."

¶ 14 The *Hickman* Court also relied upon *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), wherein the United States Supreme Court stated:

[I]n order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolu-

tion of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.

*Hill,* 474 U.S. at 59, 106 S.Ct. 366 (footnote omitted).

¶ 15 In *Hickman* we found prejudice where the defendant established that it was reasonably probable that he would not have pled guilty had he known that he was really not eligible for boot camp. *Id.* at 141–42. We were persuaded by two factors: first, that the PCRA court did not doubt the defendant's or plea counsel's credibility; and, second, that had he gone to trial, he would have only been risking one additional year of incarceration on his minimum sentence. *Id.* Accordingly, counsel's constitutionally deficient advice caused the defendant's plea to be involuntary and unknowing. *Id.* at 142.

¶ 16 We emphasize that our standard of review requires that we grant great deference to the trial court and affirm its orders if supported by the record, even though the record may support a contrary result. Indeed, this is a situation where the record could support a contrary result. Arguably, we could conclude that, even if Rathfon knew that the entire sentence would be served in a state prison, he still would have pled guilty because of the other benefits of his bargain, *i.e.,* the indecent assault charge was *nol prossed,* his prior record score was decreased from 5 to 4, and he risked a maximum of five years' incarceration had he gone to trial whereas the recommended maximum in his plea agreement was 1 ½ years.

¶ 17 However, we cannot ignore the fact that the record reveals that Rathfon bargained for a county sentence, that the court accepted the plea and sentenced

Rathfon under the continuing misapprehension that the sentence would be served in the county jail, and that plea counsel was apparently not aware that the Sentencing Code and DOC policy would result in aggregation of the sentences, which would preclude the possibility of Rathfon serving the sentence in the county jail. Additionally, it is within the province of the PCRA court to make credibility determinations, and it apparently believed Rathfon when he testified at the PCRA hearing that he would not have pled guilty had he known the sentence would be served in state prison. The PCRA court accepted Rathfon's reasons for preferring county jail over state prison and concluded that Rathfon did not get what he had bargained for, given that the written plea agreement and associate proceedings unequivocally indicated that his sentence was to be a county sentence. Since the reasonable probability test is not stringent and the record supports the PCRA court's conclusions, we must affirm.

¶ 18 Thus, we conclude that the record supports the PCRA court's determination that there was a reasonable probability that Rathfon would not have pled guilty had he known that he would not have been able to serve the sentence in a county facility.

¶ 19 Order affirmed.