J-S75022-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                   :          PENNSYLVANIA
                                                   :
                    v.                             :
                                                   :
                                                   :
KIRIE M. HANES                                     :
                                                   :
                    Appellant                      :          No. 705 EDA 2018

Appeal from the PCRA Order February 15, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0012172-2014

BEFORE: PANELLA, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED SEPTEMBER 10, 2019**

Appellant Kirie M. Hanes appeals from the order denying his first Post

Conviction Relief Act[1] (PCRA) petition.  On appeal, Appellant claims the PCRA

court erred by not holding an evidentiary hearing, the trial court improperly

engaged in plea negotiations, and plea counsel was ineffective because

Appellant did not enter a knowing and intelligent open guilty plea.  We reverse.

We adopt the procedural history set forth in the PCRA court's opinion:

> On September 25, 2014, [Appellant] was arrested and charged
> with attempted murder, aggravated assault, possession of a
> firearm by persons prohibited . . . , and possession of an
> instrument of crime.  On May 22, 2017, [Appellant] appeared
> before this court and selected a jury.[2]  On May 23, 2017, before

_____

[1] 42 Pa.C.S. §§ 9541-9546.

[2] Appellant had previously filed a motion to suppress and a Pa.R.Crim.P. 600
motion to dismiss, for which the trial court held a hearing on May 22 and 23,

trial commenced, [Appellant] entered into an open guilty plea to aggravated assault and [possession of a firearm by persons prohibited, and the remaining charges were *nolle prossed*.[3]] On that same date, after [Appellant] waived his right to a presentence report, th[e trial] court imposed concurrent sentences of two to four years of probation on each charge. [Appellant] did not file a post-sentence motion or a notice of appeal.

PCRA Ct. Op., 2/15/18, at 1. The circumstances surrounding Appellant's plea are discussed in further detail below.

Appellant did not file a direct appeal, but filed a timely *pro se* PCRA petition. The PCRA court appointed counsel, who filed an amended PCRA petition asserting that Appellant's guilty plea was unlawfully induced and trial counsel was ineffective by permitting Appellant to enter such a plea. Am. PCRA Pet., 1/11/18, at 3. On January 16, 2018, the PCRA court issued a Pa.R.Crim.P. 907 notice. Neither PCRA counsel nor Appellant filed a response to the Rule 907 notice. The PCRA court formally dismissed the petition on February 15, 2018. Appellant timely appealed on March 2, 2018.

Appellant raises three issues, which we have reordered as follows:

[1.] Whether the court erred in not granting relief on the PCRA petition alleging the guilty plea was unlawfully induced.

[2.] Whether the court erred in not granting relief on the PCRA petition alleging [plea counsel] was ineffective for causing . . . Appellant to enter an involuntary or unknowing guilty plea.

_____

2017, which we quote from below. On May 23, 2017, the trial court granted Appellant's motion to suppress but denied the Rule 600 motion.

[3] The facts underlying Appellant's open guilty plea are not pertinent to our disposition.

- 2 -

[3.] Whether the [PCRA court] erred in denying . . . Appellant's PCRA petition without an evidentiary hearing on the issues raised in the amended PCRA petition regarding [plea counsel's] ineffectiveness?

Appellant's Brief at 9.

In support of his first issue, Appellant argues the trial court and his plea counsel pressured him to plead guilty when he was innocent. *Id.* at 17. By way of background, at the May 23, 2017 hearing, the following exchange occurred.

> THE COURT: We're back on the record. We had a recess. We're about to either finish this motion today and proceed. The jurors are in the building.
>
> But in the meantime, [Appellant], there was another offer conveyed to you. And my understanding is that -- well, let me backup. If you are convicted, under the guidelines this case is a 10/5. So the guidelines are 60 to 72 months plus or minus -- actually that's wrong. Because it's a deadly weapon enhancement used, the guidelines are 78 to 90 plus or minus 12. Which puts you in the standard range of a sentence that I would start at basically seven and a half years. That's the bottom of the guidelines.
>
> Now, both the attorneys had a conversation with me in the back and they asked me if I would consider deviating from the guidelines. Recognizing that you have some arguments and I'm prepared to rule; the Commonwealth believes that even if I rule in your favor on the statement, they are prepared and they are ready to go to trial. That they can convict you without that.
>
> [Appellant's counsel] suggested that you plead open and that I consider giving you a sentence that would be a significant, significant deviation. And I said, Convince me. This is off the record, which is why I'm sharing it with you. And he made some arguments that convinced me to two and a half to five years. And that's based upon the fact that you have that time in. He asked if I would consider a time in sentence, I said, No, because there's always the allocation. But I would consider a two and a half to

five.  He then said that that offer was conveyed to you and you wanted a two to four.  I said, Quite frankly, no.  I won't do it.

I feel that you are in a situation where you have an opportunity if in fact you did this, to get less than half the amount of time that you will get if you are convicted.  Probably about a third of the amount of time recognizing that I may very well grant a motion.  But I can tell you you're not going to be successful on your [R]ule 600 motion.  I'm pretty clear about that.  You might be successful in your motion to suppress the statement.  I will issue my ruling if there's no plea in this case.  [Appellant's counsel] came back and said, Judge, would you consider two to four and probation? I said, No, I won't.  I quite frankly -- hold on a second.

[H]ere's the problem I have with the long probationary tail.  I think quite frankly it sets you up for failure.  And then I end up giving you five to ten or six to 12 or seven and a half to 15.  Because chances are you will get out.  You will decide to smoke some dope.  That's a violation.  Or you will do something stupid like move and not give a new address or some other things.  So I don't think it's in your best interest.

I prefer when I sentence people, to give them straight time.  You pay your debt.  You're either rehabilitated or you're not.  So I actually think your counter proposal is actually not in your best interest.  It's not my job to consider your best interest.  My job is as I told you yesterday when there was a discussion about another plea, is not only your rehabilitative needs but the protection of society.

You do have, I think, an unusual opportunity here.  The Commonwealth is ready to bring people into court.  They will bring people into court just like your attorney has the right.  They will even bring a witness in for your attorney.  But they are that confident that they can proceed.  So as you can see, the D.A. is not in the room right now because I want to have this conversation with you.  That's where we are.  I want to let you know why I don't like the idea of probation.  And quite frankly, I may be retired and then you will get another judge on probation and then they won't know anything about the case.  And chances are if you screw up, you would really get launched because on paper you really look bad.  There's no other way of putting it.

So you understand even if I give you what I thought was fair, the two and a half to five; and I said I'll go down to two but I won't change that five. I have to justify why I'm giving you such a light sentence and on paper that's pretty hard to do. But I'm willing to take that heat. I'm not going to put that on another judge, which is what is going to happen because I will be retired in a few years. So do you want to talk to [Appellant's counsel]? Talk to [Appellant's counsel] and I'll be happy to answer any questions. Otherwise as you know, we will go ahead. The jury is in the back.

[Appellant's counsel]: His major concern is his mother has cancer and he's hoping to get out obviously as soon as he can.

THE COURT: Well, that's part of the reason why I agreed. So you know, [Appellant's counsel] told me all of this. That's why I said, Okay. Against my better interest, I'll go down to two which then gives you credit as soon as you get paroled. I'll be honest with you, it gets you into the parole board faster. That's what it does. And then it gets you credit faster for your back time. But putting that probationary tail, I don't see how it helps you. I don't see how it helps you.

So if your attorney can convince me why there's a good reason to give you that tail instead of the two to five, I'll listen one more time before the jury comes up. But I just don't see how it helps you. It's up to you. You're taking a big gamble. A big gamble. But that's your call. Remember, you still have the 6105, too, and the guidelines are pretty high for that, too. So you have some serious guidelines that you are looking at.

And I will tell you, and I don't want you to feel any pressure. But it is my practice, and [Appellant's counsel] can tell you if someone gets convicted of an assault and then they get convicted of 6105, I can consec those times because you shouldn't have a gun. On a plea I don't consec them. But on a conviction I do because there's two separate crimes here: Committing the crime but then having the gun. And I'm that serious about possession of guns because people know they are not suppose[d] to have a gun.

This presupposes that you're convicted. And according to the D.A. and I knew none of this yesterday, she feels she has got a recording of you pretty much in the prison indicating that you knew exactly what was going on and reaching out to your girlfriend to have her contact people. [Appellant's counsel] will

J-S75022-18

deal with that however he deals with that. But I'm telling you, that's why the D.A. said, Judge, I'm going to trial today even if I grant the statement.

See, because if I grant the motion to suppress the statement, they could ask me to postpone it. They could also ask me to postpone it right now to get a parole agent in here. And then you will sit in jail for another six months before you get a new trial date.

[Appellant's counsel], we will have one last conversation and then I'm going to call [the assistant district attorney] in. If your client wants to have any discussion right now while she's out of the room or any questions to me, I'll answer them. Then I'll bring [the assistant district attorney] in. She will either ask for a date to get that parole agent in here or we will start the trial.

Oh, and one last thing. You know you're going to get paroled faster if you plea.

[Appellant]: I understand that.

THE COURT: Let's get [the assistant district attorney] in. All right, [assistant district attorney]. I had a conversation with the defendant. As I understand it, he does not wish to consider what I told him I would in all likelihood give him, which is two to five today. . . .

N.T., 5/23/17, at 38-45.

The trial court and the parties then discussed issues relevant to the

motion to suppress. After that discussion, the following exchange occurred:

THE COURT: [Appellant], I want to remind you you're still under oath. Your attorney is still trying to convince me to give you two to four plus probation. Why should I give you two to four plus probation?

[Appellant]: Because if I do anything wrong, that's on me. I understand what you're saying about you looking out for my best interest. But at the end of the day I still have to do that time if I made a mistake.

- 6 -

THE COURT: What I have heard so far is you have never done it. You never walked off your time without getting in trouble again.

[Appellant]: Well, honestly I have not gotten in trouble this time.

[Appellant's counsel]: We're talking about why the judge should agree to two to four with a probation tail?

THE COURT: Instead of two to five.

[Appellant's counsel]: Instead of two to five. And that's in exchange for you pleading guilty in this case to an aggravated assault.

THE COURT: Right. The D.A. said she would drop the attempted murder.

[Appellant's counsel]: Okay. We're off the record.

THE COURT: We're on the record.

[Appellant's counsel]: We're on the record right now.

THE COURT: I'm willing to listen to you.

[Appellant]: The whole reason, I'm dealing with my mother. That's my main thing. I understand it being the case involved with me, but it's more I want to see my mom. I want to get home to my mom. My mom is 75-years-old. My mom has cancer. She has diabetes. There's a lot of things that are going on. I understand, yeah, you right. Two and a half to five, I'm not telling you that you're doing anything -- like trying to bribe. I'm not saying that. I'm saying the whole thing is not good in my interest as far as the parole board. Because the parole board -- I understand how you are looking at it. But the parole board is going to say they don't care about the time that you credited. And all they are going to say, you're going to do this now and you're going to do this later. That's how they are going to do it.

THE COURT: Okay. So you understand you have to plead guilty?

[Appellant]: I understand that.

- 7 -

THE COURT: And you're telling me you will plead to two to four. How many years probation do you want? Five?

[Appellant]: I didn't say that.

THE COURT: If you could walk off three, you could walk off five, can't you?

[Appellant]: I believe so.

THE COURT: I usually don't negotiate with defendants.

[Appellant]: I appreciate you doing it, though.

THE COURT: I'm trying to be fair here. I don't like some of the things that happened in this case. I don't think it has anything to do with whether or not you did it. I don't like the fact, I'll be honest with you, that you sat in that prison cell for as long as you did. So you're going to win the motion [to suppress]. That's like winning a battle but losing the war. Now I looked at your statement and the Commonwealth doesn't need your statement. They told me they are ready to go ahead [for trial].

The ball is in your court, to use the sports analogy. I'm not keeping those jurors. They are ready to go. They made the decision. They understand I'm suppressing the statement and they are ready to go to trial. They still will consider it. It's your call right now. I'll give you the two to four plus five.

[Appellant]: Would you say three?

THE COURT: He said three. I'll give you four. That's the end of it.

[Appellant]: That's it.

THE COURT: That's it or the jury comes right out. Final. I feel like I'm on a TV show. I'm in a good mood today. It gets you out of the parole board. Now you can't tell me that there's another issue here. Then we just go to trial and the chips fall where they may.

[Appellant]: I'll take it. Can I ask one more question?

THE COURT: You can ask.

[Appellant]: Will everything run current [sic]?

THE COURT: The probation can't be concurrent.

[Appellant]: I'm not talking about probation. I'm talking about the whole case.

[Appellant's counsel]: The whole sentence.

THE COURT: The whole sentence is two to four on the aggravated assault and the weapons, the 6105.

[Appellant]: With time served?

THE COURT: Well, I give you credit for time served.

[Appellant's counsel]: Yes.

THE COURT: They are going to have do it in prison which goes to your back time and which goes to your front time. It should go to your front time first. We are done today. If you do what you need to do, I never see you again except when you're out on the street and you could say hello to me and I'll say hello.

[Appellant]: All right.

[Appellant's counsel]: Okay?

[Appellant]: All right.

*Id.* at 50-55. The trial court then conducted a colloquy of Appellant regarding his guilty plea, Appellant pled guilty, and the court sentenced him to two to four years' imprisonment followed by four years of probation.

The trial court then advised Appellant of his post-sentence rights, noting, in pertinent part:

If you have any issues, please contact [Appellant's counsel] in terms of the credit [for time served]. And you have ten days from

- 9 -

today's date to ask me to reconsider the sentence. It's highly unlikely that I would do so since I just gave you the sentence that you asked me. In fact, you negotiated it. **You negotiated it with me.** So you could choose not to do that. You would have 30 days from today's date to file an appeal to the Superior Court alleging any errors of law.

*Id.* at 70 (emphasis added). The trial court completed its colloquy.

On appeal, Appellant claims that the trial court bargained with him for his sentence, particularly over the length of probation. Appellant's Brief at 19. Appellant points out that the trial court suggested five years' probation, Appellant suggested three years' probation, and the trial court counteroffered with a final offer of four years' probation—the sentence imposed. *Id.* Appellant concludes that because the trial court's active negotiation in the plea bargaining process was improper, his guilty plea was unlawfully induced. *Id.* at 19-20.

The standard of review is well-settled:

This Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.

*Commonwealth v. Grayson*, ___ A.3d ___, ___, 2019 WL 2417016, *3 (Pa. Super. 2019) (citation omitted).

To prevail on a claim alleging counsel's ineffectiveness under the PCRA, [the petitioner] must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's course of conduct was without a reasonable basis designed to effectuate his client's interest; and (3) that he was prejudiced by counsel's ineffectiveness, *i.e.* there is a reasonable probability that but for

the act or omission in question the outcome of the proceeding would have been different.

It is clear that a criminal defendant's right to effective counsel extends to the plea process, as well as during trial.

*Id.* at *6 (citation omitted). "A criminal defendant has the right to effective counsel during a plea process as well as during trial. A defendant is permitted to withdraw his guilty plea under the PCRA if ineffective assistance of counsel caused the defendant to enter an involuntary plea of guilty." *Commonwealth v. Rathfon*, 899 A.2d 365, 369 (Pa. Super. 2006) (citations and quotation marks omitted).

In *Commonwealth v. Evans*, 252 A.2d 689 (Pa. 1969), it was undisputed that the trial court participated in the plea bargaining process prior to the entry of the defendant's guilty plea. *Evans*, 252 A.2d at 690. Specifically, the trial judge, defendant's counsel, and the district attorney had two discussions regarding the trial judge imposing sentence on one count if the defendant pleaded guilty to five counts.[4] *Id.* The defendant petitioned for post-conviction relief, arguing plea counsel was ineffective. *See id.* The Commonwealth countered that because the trial judge kept his side of the bargain, the defendant's conviction should stand. *Id.* at 691.

---

[4] The *Evans* Court did not identify the counts, but it was noted that the defendant had pleaded guilty to robbery and several related offenses. *Evans*, 252 A.2d at 692.

- 11 -

The Pennsylvania Supreme Court disagreed, holding it was improper "for the trial judge to [p]articipate in the plea bargaining which so often precedes the entry of a guilty plea." *Id.* at 690. "Such a procedure," the *Evans* Court reasoned, "is not consistent with due process and that a plea entered on the basis of a sentencing agreement in which the judge participates cannot be considered voluntary." *Id.*

> While we are not willing to completely proscribe plea bargaining, we do recognize the awesome effect of a guilty plea and the sensitive nature of the bargaining process makes certain safeguards essential. Our concept of due process must draw a distinct line between, on the one hand, advice and bargaining between defense and prosecuting attorneys and, on the other hand, discussions by judges who are ultimately to determine the length of sentence to be imposed.
>
> This position is in conformity with that of the most respected commentary in the area. For example, Informal Opinion No. 779, ABA Professional Ethics Committee announces that 'A judge should not be a party to advance arrangements for the determination of sentence, whether as a result of a guilty plea or a finding of guilty based on proof.' 51 A.B.A.J. 444 (1965). Furthermore, the American Bar Association Project on Minimum Standards for Criminal Justice sets out the explicit provision under 'Responsibilities of the trial judge' that 'The trial judge should not participate in plea discussions.' ABA Minimum Standards, Pleas of Guilty, s 3.3 (Tent. Draft, February, 1967).[5] First, the defendant

---

[5] Presently, ABA Standards for Criminal Justice 14-3.3(d) governs non-participation by the trial judge:

> (d) A judge should not ordinarily participate in plea negotiation discussions among the parties. Upon the request of the parties, a judge may be presented with a proposed plea agreement negotiated by the parties and may indicate whether the court would accept the terms as proposed and if relevant, indicate what sentence would be imposed. Discussions relating to plea

can receive the impression from the trial judge's participation in the plea discussions that he would not receive a fair trial if he went to trial before the same judge. Second, if the judge takes part in the preplea discussions, he may not be able to judge objectively the voluntariness of the plea when it is entered. Finally, the defendant may feel that the risk of not going along with the disposition which is apparently desired by the judge is so great that he ought to plead guilty despite an alternative desire.

\*     \*     \*

For these reasons, we feel compelled to forbid any participation by the trial judge in the plea bargaining [p]rior to the offering of a guilty plea. Nor do we attempt as urged by the Commonwealth to draw a line between those cases where the judge participates and keeps his bargain and those where he does not act as he has promised. The evil with which we are confronted is equally present in both situations: The unquestioned pressure placed on the defendant because of the judge's unique role inevitably taints

_____

negotiations at which the judge is present need not be recorded verbatim, so long as an appropriate record is made at the earliest opportunity. For good cause, the judge may order the record or transcript of any such discussions to be sealed.

ABA Standards for Criminal Justice 14-3.3. The section also notes:

Providing an active role for judges in the plea negotiation process, even at the parties' request, is ill-advised, particularly where that judge will preside at trial or at evidentiary hearings should the plea negotiations fail. Such a role is fundamentally in tension with the basic principle that the court "should never through word or demeanor, either directly or indirectly, communicate to the defendant or defense counsel that a plea agreement should be accepted or that a guilty plea should be entered." Exposure to the facts and tactical considerations revealed during guilty plea negotiations may unduly color the judge's view of the evidence, and predispose the judge in his or her legal rulings.

*Id.* at Commentary (footnote omitted).

the plea regardless of whether the judge fulfills his part of the bargain.

*Id.* at 691 (footnote and some quotation marks omitted).

More recently, in **Commonwealth v. Johnson**, 875 A.2d 328 (Pa. Super. 2005), on the day the defendant's trial was to commence in Philadelphia, the trial court inquired about the status of the Commonwealth's plea offer. **Johnson**, 875 A.2d at 330. Specifically, the plea offer was for ten[6] to thirty years' imprisonment, concurrent to a thirty to seventy year sentence of imprisonment in a Delaware County case from which the defendant had filed a direct appeal. **Id.** The defendant's counsel responded that he advised the defendant of the offer, but the defendant had rejected the offer and countered with a seven-and-one-half to twenty year sentence. **Id.**

> In response to the defendant's counteroffer, the trial court
>
> actively encouraged [the defendant] to change his mind and plead guilty. Twelve pages of the hearing transcript document the court's persistent advisements, which included the following: that the Commonwealth's function was to protect [the defendant's] best interest; that the offer on the table was among the best he had ever witnessed as a jurist; that [the defendant] would be "extremely fortunate" if his other appeal garnered a new trial, let alone arrest of judgment, and that the new trial would likely end in another conviction with the possibility of consecutive sentences instead of the present offer's guarantee of a concurrent sentence; that [the defendant] was "fortunate to have such a cooperative

---

[6] The **Johnson** Court noted that although the parties and the court specifically discussed an **eight** year minimum sentence at the underlying hearing, it was undisputed that the Commonwealth's plea offer was for a **ten** year minimum sentence. **Johnson**, 875 A.2d at 330 n.1. The defendant's plea counsel did not object.

- 14 -

D.A., he has taken into consideration that sentence in Delaware County"; and that [the defendant] would only be fifty-eight years old when he completes his thirty year sentence, and life would "go on." The court also criticized [the defendant] for "squabbling over two more years which has no impact whatsoever in what's going to go on in your life because of the sentence in Delaware County." When Appellant agreed to plead guilty, the court declared "I think you made a wise decision, sir . . . ." The court then imposed a sentence of ten to twenty years' imprisonment to run concurrently to his Delaware County sentence.

*Id.* at 330 (footnote and citations omitted).

In **Johnson**, the defendant apparently did not file a direct appeal, but instead filed a timely PCRA petition claiming that his plea counsel was ineffective by not claiming the trial court abused its discretion by participating in the plea process. *Id.* at 331. The **Johnson** Court agreed, holding it is settled that a plea entered on the basis of a sentencing agreement in which the judge participates cannot be considered voluntary. *Id.* (citing **Evans**, 252 A.2d at 689).

Indeed, a trial judge is forbidden from participating in any respect in the plea bargaining process prior to the offering of a guilty plea. . . .

The plea hearing excerpts reprinted above clearly show that the trial court actively persuaded [the defendant] to accept the plea offer made to him. Moreover, counsel's inaction during this extended negotiation was both unreasonable and prejudicial. We are therefore compelled to declare [the defendant's] guilty plea involuntarily tendered, and to vacate judgment of sentence and remand for further proceedings.

*Id.* at 331-32.

Here, the trial court engaged in extensive discussions with Appellant directly. **See** N.T., 5/23/17, at 38-45, 50-55 (court noting it did not usually

- 15 -

"negotiate with defendants"). The trial court explicitly negotiated the length of probation directly with Appellant himself. *See id.* at 50-55 (Appellant asking the trial court if it would accept three years' probation and the court countering with four years' probation). The trial court's active negotiation here violates the *Evans* Court's prohibition against this type of active participation by the trial court. *See Evans*, 252 A.2d at 690-92 (noting that if the trial court "takes part in the preplea discussions, [the trial court] may not be able to judge objectively the voluntariness of the plea when it is entered").

That the trial court and Appellant agreed on the length of his probation and the trial court adhered to its bargain does not negate the constitutional infirmity. *See id.* Appellant's plea counsel, identical to the defendant's plea counsel in *Johnson*, did not attempt to prevent the trial court's active negotiation and therefore "was both unreasonable and prejudicial." *See Johnson*, 875 A.2d at 332; *see also Rathfon*, 899 A.2d at 369. Therefore, based on such binding precedent, we are constrained to conclude that the PCRA court erred in denying Appellant's PCRA petition and he is entitled to relief. Because we granted relief on Appellant's first issue, we need not address his remaining issues. For these reasons, we reverse the PCRA court's order, vacate the judgment of sentence, and remand for further proceedings.

Order reversed. Judgment of sentence vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/10/19