J-S74007-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
TYREEK TORRENCE :
:
Appellant : No. 1906 EDA 2018

Appeal from the Order Entered June 12, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009952-2013

BEFORE: BENDER, P.J.E., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.: **Filed: February 7, 2020**

Appellant, Tyreek Torrence, appeals from the order denying his petition

for relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.

§§ 9541-9546. After careful review, we affirm.

On April 7, 2015, Appellant entered an open guilty plea to the crimes of

robbery, robbery of a motor vehicle, conspiracy to commit robbery, and two

firearm offenses. At Appellant's guilty plea hearing, the Commonwealth

summarized the factual basis for the plea as follows:

> [I]f the Commonwealth w[ere] to go to trial, it would present the
> live testimony of Ronald Brown, who was 44 at the time of the
> incident. [H]e would indicate that he was working at Carnival Four
> Pizza back on July 17th of 2013, around 10 o'clock or so in the
> evening, when he received a phone call for a delivery of pizza to

_____

[*] Former Justice specially assigned to the Superior Court.

the address of 1139 Union Street in West Philadelphia. The phone number that called him was (702) 540-[…].

[W]hen Mr. Brown got to th[at] address…, he went up the stairs, rang the doorbell and was waiting for individuals to come to the door. At the same time, … Mr. Brown saw [Appellant], as well as Marvin Alsbrook, … both of whom were known to him in the area. He [had] seen them on five to six occasions in the area of 1123 North 41st Street. He saw them approaching him while he was standing on those steps.

[]Marvin Alsbrook was armed with a .38 revolver and approached Mr. Brown and asked him what was up. At that time[,] Mr. Brown [dropped] his keys, and [Appellant grabbed him] by his shirt collar and led him down the steps. At that time, Marvin Alsbrook went up the steps [and] picked up Mr. Brown's keys. [Appellant] then took Mr. Brown to the ground and went into his pockets and took his money and … his wallet.

[Subsequently,] Marvin Alsbrook went into the victim's vehicle, and [Appellant] followed in after. Marvin Alsbrook drove the vehicle away.

[T]he Commonwealth would also present the live testimony of Police Officer Robinson…. He would indicate that he was on duty as a 39th District police officer four days after the carjacking on July 21st of 2013, around 6:17 or so in the evening.

[Officer Robinson] was working in the area of the 3400 block of Sydenham Street … when he came into contact with the vehicle that was taken during the carjacking. It was a 2003 gray Chrysler Town and Country minivan.

[]Officer Robinson conducted a[] check of that vehicle, and … confirmed that the vehicle was in stolen status and was taken at a point of gun, in a carjacking, four days before.

Officer Robinson followed the vehicle, at which time he noticed that [it] picked up speed, and he lost sight of [it] due to the rate of speed that [it] was traveling. When he finally caught up to the vehicle, he noticed [Appellant and Appellant's] girlfriend[] exiting [it] rather quickly. [Officer Robinson ordered] them to stop.

[S]ubsequently, Mr. Brown made an identification of [Appellant] as being the individual [who] went into his pockets and led him down the steps during the carjacking.

- 2 -

Additionally, it should be noted that[, on the night of the incident,] Mr. Brown … positively identified Marvin Alsbrook … in the computer system.

Mr. Brown would testify that he did not give [Appellant] or Marvin Alsbrook permission to take his money, his cell phone[,] or his car keys, and the car keys were recovered from [Appellant] when he was arrested.

[Appellant] is not licensed to carry a firearm in the Commonwealth of Pennsylvania. And[,] if we were to go to trial, for purposes of [18 Pa.C.S. §] 6105, … I would mark [Appellant]'s criminal extract out of CP-90498-2009, which indicates a prior felony adjudication for robbery, gunpoint robbery, which makes him … ineligible to possess a firearm [pursuant to Section 6105], and I would move those items into evidence and rest.

N.T., 4/7/15, at 17-21.

The trial court accepted Appellant's plea, and the case immediately proceeded to sentencing. "The Commonwealth requested a sentence of 20 to 40 years[']" incarceration, while the "defense made no recommendation as to the term of the sentence, but did request a downward departure from the sentencing guidelines." PCRA Court Opinion ("PCO"), 5/16/19, at 2. When afforded his right to allocution, Appellant apologized to Mr. Brown for his crimes. *Id.* at 3. Subsequently, the trial court sentenced Appellant to an aggregate term of 6½-33 years' incarceration, followed by a 20-year term of probation. Appellant did not file post-sentence motions, nor did he file a direct appeal, despite the trial court's advising him of his rights to do so following sentencing. *Id.* at 3-4.

On March 7, 2016, Appellant filed a *pro se* PCRA petition, and appointed counsel filed an amended petition on his behalf on November 1, 2017. In essence, Appellant argued, *inter alia*, that his guilty plea was involuntarily and

unlawfully induced by pressure from his trial counsel. The PCRA court held an evidentiary hearing on June 12, 2018, where both Appellant and his trial counsel, Attorney Jason C. Kadish, testified. As recounted by the PCRA court, Appellant

> testified that he took an open plea and that he was "okay" with the minimum sentence of 6½ years[' incarceration], but was under the impression that his maximum sentence would be 13 years[' incarceration]. N.T., [6/12/18], [at] 10…. He also testified that [Attorney] Kadish had advised him afterwards that he would file a Motion for Reconsideration of Sentence. [*Id.* at 11.] This conversation allegedly occurred in the "basement" [of the Criminal Justice Center]. [*Id.*]
>
> On cross-examination, [Appellant] acknowledged signing the written guilty plea colloquy and understood that he could have been sentenced up to 72 years in prison. [*Id.* at 18]. [Appellant] also testified that afterwards he asked trial counsel only for reconsideration, but not an appeal. [*Id.* at 19].
>
> The Commonwealth called [Attorney] Kadish … who testified that[,] prior to the start of the underlying trial[,] he had filed a motion to suppress evidence[,] which was denied, but that he was successful in arguing against the Commonwealth's motion to admit prior bad acts of his client. [*Id.* at 22]. To the best of his recall at the time, he believed the minimum aspect of the sentence was negotiated at 6½ years, but the "top end" was not. [*Id.* at 23]. He also recalled
>
>> []discussing the case with [Appellant]. I remember talking about the strength of the case against him and Mr. Alsbrook. Because I do believe that Mr. Alsbrook subsequently went to trial. But I think I talked about if we went to trial[,] the case was going to proceed against the both of them together. It was going to be a joint trial. I t[ol]d … him that I did not think that there was a likely chance that we would prevail in a significant way at the time of trial. I told him that, based upon the charges in the case, that if we did not prevail in a significant manner, meaning that the serious charges you were acquitted of, that he would be facing a very severe sentence from the [c]ourt after a jury trial. And

- 4 -

> I discussed with him that the customary things that I would -- that if we did enter into a non-trial the standard rights he would be giving up. But the fact is that we had already litigated a pretrial motion to suppress, so the difference [was] what [we] would … be able to appeal would be limited afterwards.

[*Id.*]

[Attorney] Kadish had no recollection of speaking with [Appellant] once the matter concluded in the courtroom. [*Id.* at 30]. He further had no recall of speaking to his client "downstairs" afterwards. [*Id.* at 30-31]. He also stated that in [a] case involving a plea, if a client asked to file an appeal, his general practice would be to file a post-sentence motion in light of the appellate rights waived when the plea is entered. [*Id.* at 31-32]. If counsel believed the sentence imposed was illegal, he would himself file a motion for post-trial relief. [*Id.* at 32].

When asked on cross-examination as t[o] whether he was taken aback by the sentence imposed, [Attorney] Kadish stated:

> []I am not taken aback. I mean, I would have hoped -- I mean, I am always trying to get the lowest possible sentence for my client. I think it's worth discussion if you're asking me to evaluate the sentence, was that this case was ready to proceed to trial before Judge Wogan and it was my impression that after trial, which I did not feel that we would prevail in any significant way after he testified, that Judge Wogan, after a jury trial, in both my experience from 2005 to 2011 as a prosecutor and that following from 2011 up until the time of [Appellant]'s plea, that in both cases I prosecuted and in cases I've defended in front of Judge Wogan, that after a jury trial in many cases he had a practice of imposing consecutive sentences on charges for which somebody was convicted….

> And given that I believe that the guidelines were somewhat significant in this case, the Commonwealth had presented through other[-]acts evidence that they weren't going to be able to introduce at trial, but I believe that through my discussions with [the prosecutor], [she] felt that there were a number of aggravating circumstances in this case, which would be emphasized if we went to sentencing. And I don't know what exactly was read onto the record, without

> reviewing it, at the time of the plea and then subsequent sentencing.

[**_Id._** at 33-34.]

> Upon conclusion of the testimony, this [c]ourt found [Attorney] Kadish's testimony to be credible and also determined that [Appellant]'s open guilty plea was made in a[] knowing, intelligent and voluntary manner, and was not in any way coerced, resulting in a denial of PCRA relief.

PCO at 4-6.

Appellant filed a timely notice of appeal, and a timely, court-ordered Pa.R.A.P. 1925(b) statement. The PCRA court issued its Rule 1925(a) opinion on May 16, 2019. Appellant now presents the following question for our review: "Whether the [PCRA] court erred in not granting relief on the PCRA petition alleging counsel was ineffective[?]"[1] Appellant's Brief at 7.

As Appellant filed a timely PCRA petition, and because there is no dispute that his ineffectiveness-of-counsel claim is cognizable under the PCRA statute, we immediately proceed to the merits of his infectiveness claim.

> Our standard in reviewing a PCRA court order is abuse of discretion. We determine only whether the court's order is supported by the record and free of legal error. This Court grants

---

[1] In Appellant's Rule 1925(b) statement, he raised two claims. As presented in his brief, Appellant alleged that counsel was ineffective for "causing [Appellant] to enter an unknowing or involuntary guilty plea." Appellant's Amended 1925(b) Statement, 8/17/18, at 1 ¶ A. He also asserted that the "guilty plea was unlawfully induced." **_Id._** at ¶ B. Appellant abandons the second claim in his statement of the questions presented, but then raises the matter as a subpart of his ineffectiveness claim in the Argument section of his brief. **_See_** Appellant's Brief at 16. We conclude that these claims are, in fact, identical, as both assert that counsel's ineffectiveness caused Appellant to enter his plea involuntarily. Accordingly, we decline to deem Appellant's unlawful-inducement claim waived due to his failure to present it separately in his statement of the questions presented.

great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding. We will not disturb the PCRA court's findings unless the record fails to support those findings.

*Commonwealth v. Rathfon*, 899 A.2d 365, 368–69 (Pa. Super. 2006) (cleaned up).

It is axiomatic that criminal defendants have a right to the effective assistance of counsel when entering a guilty plea. *Id.* at 369. Additionally, a "defendant is permitted to withdraw his guilty plea under the PCRA if ineffective assistance of counsel caused [him] to enter an involuntary plea of guilty." *Id.* (quoting *Commonwealth v. Kersteter*, 877 A.2d 466, 468 (Pa. Super. 2005)).

> We conduct our review of such a claim in accordance with the three-pronged ineffectiveness test under section 9543(a)(2)(ii) of the PCRA, 42 Pa.C.S.[] § 9543(a)(2)(ii). The voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.
>
> In order for Appellant to prevail on a claim of ineffective assistance of counsel, he must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. Appellant must demonstrate: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. The petitioner bears the burden of proving all three prongs of the test.

*Id.* (cleaned up).

We begin our analysis by determining whether there is arguable merit to Appellant's ineffective-assistance-of-counsel claim(s). Appellant asserts

that there is arguable merit to his ineffectiveness claim(s) because trial counsel's "coercive actions played a large roll in the unlawful inducement of" his guilty plea. Appellant's Brief at 17. He alleges that trial counsel never adequately informed him regarding the maximum sentence he could receive, nor the fact that he could not appeal the denial of his suppression motion if he entered a guilty plea. Appellant also claims that he requested, but trial counsel failed to file, a post-sentence motion for reconsideration of his sentence.

As to the first allegation, Appellant asserts that through conversations with Attorney Kadish, he expected the minimum sentence of 6½ years' incarceration. *Id.* at 13. However, "Appellant was under the impression after speaking to [Attorney Kadish] that the maximum" sentence would be twice the minimum, or 13 years' incarceration. *Id.* Thus, Appellant contends that his maximum sentence was 20 years longer than he expected based on his consultation with Attorney Kadish.

The PCRA court determined that the "only conclusion one can reach based upon [Appellant]'s PCRA hearing testimony is that he was unhappy with the maximum sentence that was imposed. Nothing in the record suggests that Attorney Kadish made representations that his sentence would simply be double the minimum…." PCO at 10. The trial court informed Appellant of the maximum penalties for each of the offenses during the guilty plea colloquy. *See* N.T., 4/7/15, at 7-8. Nothing in the record of the plea/sentencing hearing

indicates Appellant's expectation for a specific maximum sentence. Furthermore, Attorney Kadish testified he would have discussed with Appellant

> what the parameters of the plea were or what the guidelines were. But it was an open guilty plea. I am sure we would have discussed that the [c]ourt had the complete discretion to sentence, to impose whatever sentence. I think I probably would have discussed what I believe that -- I always talk with the client about what I believe they would receive for a sentence.

N.T., 6/12/18, at 34. The PCRA court found Attorney Kadish's testimony credible.

Appellant's entering an open plea gave the trial court wide discretion in crafting his sentence, and Attorney Kadish advised him of that fact. Although it appears that Attorney Kadish may have predicted a lesser maximum in his discussions with Appellant, that prediction was issued with the caveat that the sentence imposed was bound only by the statutory maximum sentences for the pled-to offenses. Appellant was informed of those parameters by the trial court during his plea colloquy. *See* N.T., 4/7/15, at 7-8. During the colloquy, Appellant indicated that his guilty plea was not contingent upon any promises made to him. *Id.* at 9. As the PCRA court found Attorney Kadish's testimony credible, it necessarily found Appellant's account not credible to the extent that he contends that Attorney Kadish promised him a particular maximum sentence when advising him to enter his guilty plea. Thus, we conclude that there is no arguable merit to this aspect of Appellant's ineffectiveness claim.

Appellant next asserts that Attorney Kadish failed to inform him that he would surrender his right to appeal from the order denying suppression as a

result of entering a guilty plea. However, nowhere in Appellant's brief does he direct this Court's attention to where in the record this claim is substantiated. Indeed, Appellant testified that he requested that Attorney Kadish file for reconsideration of his sentence, but that he did not request that his attorney file a direct appeal on his behalf. N.T., 6/12/18, at 11. This is simply incongruent with a claim that Appellant wanted or expected to appeal from the denial of his suppression motion; yet it is consistent with Attorney Kadish's testimony that he did advise Appellant that, by entering a guilty plea, he would forgo certain appellate rights. *Id.* at 23-24. The fact that Attorney Kadish did advise Appellant of his forfeiture of such rights is further supported by Attorney Kadish's statement to Appellant on the record following sentencing. *Id.* at 55 ("You have thirty days to file a petition with the [c]ourt, with a higher [c]ourt, in regards to appeal on the limited grounds we've discussed prior to entering your guilty plea."). In any event, at no time during Appellant's testimony during the PCRA hearing did he state that he was not informed by counsel that he gave up his right to appeal on the suppression issue when he entered a guilty plea. *Id.* at 6-19. Moreover, the trial court informed Appellant during the plea colloquy of the limited grounds for appeal following a guilty plea, none of which included the right to challenge the denial of his suppression motion. N.T., 4/7/15, at 12-14. Consequently, due to the foregoing, we conclude that there is also no arguable merit to this aspect of Appellant's ineffectiveness claim.

Finally, Appellant asserts that Attorney Kadish provided ineffective assistance of counsel by failing to file a motion for reconsideration of sentence on his behalf, despite ostensibly having asked him to do so. However, immediately following sentencing, Attorney Kadish asked Appellant, on the record, if Appellant wanted him to file a motion for reconsideration or an appeal on Appellant's behalf. *Id.* at 55. Appellant answered, "[n]o." *Id.* At the PCRA hearing, Appellant stated that he asked Attorney Kadish to file a motion for reconsideration of sentence after the hearing in the basement of the courthouse, and that the attorney responded that he would. *See* N.T., 6/12/18, at 11. However, during Attorney Kadish's testimony, he indicated that he did not recall speaking with Appellant after the plea/sentencing hearing. *Id.* at 30. He also indicated that had Appellant asked him to file the motion, he would have done so. *Id.* at 31. Based on this conflicting testimony, the PCRA court resolved the credibility question involved in favor of Attorney Kadish's version of events. As such, the record supports the court's conclusion that Appellant did not ask Attorney Kadish to file a motion for reconsideration of sentence on his behalf, and therefore there is no arguable merit to this aspect of his ineffective-assistance-of-counsel claim.

As there are no issues of arguable merit underlying Appellant's ineffectiveness-of-counsel claim(s), he is not entitled to relief. "Failure to prove any prong of th[e ineffectiveness] test will defeat an ineffectiveness claim." *Commonwealth v. Fears*, 86 A.3d 795, 804 (Pa. 2014).

Accordingly, we conclude that the PCRA court did not err or abuse its discretion in denying Appellant's PCRA petition.

Order **affirmed**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/7/20