J-S37007-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RONALD DAVIS | : | |
| | : | |
| Appellant | : | No. 2915 EDA 2018 |

Appeal from the PCRA Order Entered August 23, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-000915-2011

BEFORE: BOWES, J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.:                    **FILED SEPTEMBER 24, 2019**

Ronald Davis appeals from the August 23, 2018 order denying his petition for relief under the Pennsylvania Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-45. We affirm.

This Court previously summarized the underlying facts of this case as follows:

> [O]n July 7, 2008, around 6:20 p.m., [the Philadelphia Police Department] received a phone call for a report of a shooting at 2050 Gerritt Street in South Philadelphia. Upon arrival, the officer located victim, Freddie Mears ("the victim"), who was suffering from a gunshot wound and lying on the living room floor of a house. The victim was awake and responsive, but not [able to] provide any flash information at that time. The victim was shot in the buttock[s] and was transported by Medic to Jefferson Hospital for [treatment of] the gunshot wound. The officer wrote in his 75-48 police paperwork that the victim had stated at that time that he was shot from behind by an unknown person.
>
> At trial, the victim . . . unequivocally testified that Appellant was the shooter, and explained why he was reluctant to tell police who

shot him and why he chose not to identify Appellant at the preliminary hearing. The victim first admitted that he has in the past been convicted of forgery, burglary, and possession of a controlled substance. When the shooting occurred in 2008, he worked as a "handyman" in the neighborhood by turning on gas, electric, water, and cable for people who had their services shut off. On July 7, 2008, the victim received a phone call from Appellant requesting that the victim turn on Appellant's electric. The victim told Appellant he could not do it at that time because he was busy. During the conversation, the victim retorted, "If you can't wait, get somebody else to do it." The victim believed that Appellant took this comment as a sign of disrespect and asked the victim, "Well, where are you at?" The victim told him, "I'm on 20th and Gerritt," which was a friend's house. When the victim was finished working at his friend's house, he was standing outside that location when he notice[d] Appellant drive through the block in a truck. Appellant then came back around the block, this time as the passenger in the truck, and the truck drove up to the next hundred block of Gerritt Street. Appellant got out of the truck and walked up to the victim. The victim asked, "Yo, what's going on?" Appellant pulled a silver gun out of his pants. The victim questioned, "Oh, you going to pull a gun out on me?" The victim then turned around, whereupon Appellant shot him in his buttock. Appellant ran, jumped in the truck, and the truck pulled off. The victim walked back to his friend's house, and told him "I been shot. Call the cops." The police and ambulance came.

Candidly, the victim admitted that he did have heroin in his system when he was shot, but testified that he had a clear head when questioned by [a detective] at Jefferson Hospital. The victim did not initially tell [the detective] who shot him because he was going to "take care of matters in his own hands." Nevertheless, at the time of the initial statement, the victim did describe Appellant and his age. Later in the same statement, the victim admitted that he knew who shot him, . . . . The victim told the [d]etective that he would be able to identify Appellant if he saw him again.

. . . .

At the preliminary hearing, the victim refused to identify Appellant, but explained at trial that he had lied at the preliminary hearing because he still wanted to take matters into his own hands.

*Commonwealth v. Davis*, 159 A.3d 595 (Pa.Super. 2016) (unpublished memorandum at 2-4) (internal brackets omitted for clarity) ("*Davis I*").

After the preliminary hearing at which the victim refused to directly identify Appellant, the victim made a phone call to his wife confirming that he was planning to take personal retaliatory action against Appellant. *Id*. at 3. However, "the victim [later] explained at trial, 'I know if I did take matters into my own hands, you know, I probably would have been in jail for the rest of my life.'" *Id*. This phone call was later presented as evidence by the Commonwealth to explain the evolution of the victim's identification of Appellant. *Id*.

At the conclusion of a jury trial on February 27, 2012, Appellant was convicted of aggravated assault, violation of the Pennsylvania Uniform Firearms Act, and possession of an instrument of crime. Following the reinstatement of his direct appellate rights, *nunc pro tunc*, this Court affirmed Appellant's judgment of sentence, and on June 5, 2017, our Supreme Court denied Appellant's petition for allowance of appeal. *See Davis I*, *supra*., appeal denied, 169 A.3d 565 (Pa. 2017). On June 15, 2017, Appellant timely filed a *pro se* PCRA petition, alleging various claims for relief. PCRA counsel was appointed, but on October 10, 2017, he submitted a no-merit letter pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa.Super. 1988). The PCRA court ordered PCRA counsel to file an amended no-merit letter explicitly addressing

PCRA counsel's communications with Appellant and the details of his investigation. PCRA counsel complied, identifying a single potentially-meritorious issue: "Trial counsel was ineffective by failing to listen to audio evidence of a recorded phone conversation prior to the start of trial which would have lead a reasonable counsel to advise the petitioner to accept the guilty plea." *See* Amended No-Merit Letter, 12/12/17, at 7.

On April 24, 2018, the PCRA court held an evidentiary hearing at which Appellant testified via video conference. On May 21, 2018, a second evidentiary hearing was held at which trial counsel testified in-person, and at which Appellant was present. Thereafter, this discrete issue was also extensively briefed by both Appellant and the Commonwealth. On August 23, 2018, the PCRA court denied Appellants' PCRA petition via order. A proof of service attached to that order indicates that the PCRA court sent a copy of the order to counsel for both Appellant and the Commonwealth on the same day. On October 5, 2018, Appellant's counsel filed a notice of appeal styled as a "1925(b) Statement." On October 16, 2018, counsel filed an amended notice of appeal styled as a "Notice of Appeal From PCRA Decision."

Before turning to the merits of Appellant's claim, we must assess whether we have jurisdiction to entertain this appeal. Pursuant to the Pennsylvania Rules of Appellate Procedure, Appellant's notice of appeal was due on or before September 24, 2018. *See* Pa.R.A.P. 903(a) (notice of appeal shall be filed within 30 days after the entry of the order from which the appeal

is taken); *see also* 1 Pa.C.S. § 1908 (whenever the last day of the appeal period falls on a weekend or on any legal holiday, such day shall be omitted from the computation of time). Appellant's notice of appeal was not filed until October 5, 2018, at the earliest. Ordinarily, such a failure to lodge a timely notice of appeal would result in immediate quashal of this appeal. *See* Pa.R.A.P. 903(a); *Commonwealth v. Crawford*, 17 A.3d 1279, 1282 (Pa.Super. 2011) (quashing untimely appeal from denial of PCRA petitions). However, the record before us reveals that the PCRA court did not adequately comply with the service requirements set forth at Pa.R.Crim.P. 908(E), which requires that "when the defendant is not present in open court, the judge, by certified mail, return receipt requested, shall advise the defendant of the right to appeal from the final order disposing of the petition and of the time limits within which the appeal must be filed."

Thus, because Appellant was not present in open court when the PCRA court denied his petition, the PCRA court was required to provide Appellant with certified notice of his appellate rights under Rule 908. The PCRA court failed to do so. In relevant part, the proof of service attached to the PCRA court's order indicates only that copies of the August 23, 2018 order were sent to counsel for Appellant and the Commonwealth via non-certified, first-class mail. Furthermore, the clerk of courts did not make an appropriate notation in the PCRA docket concerning the date of service for the PCRA court's order. *See* Pa.R.Crim.P. 114(C)(2)(c). This lack of notation complicates matters, as

- 5 -

there appear to be multiple copies of the relevant proof of service attached to the August 23, 2018 order in the certified record. The first is dated contemporaneously with the original order, the second is dated October 9, 2018, and the third is dated October 10, 2018. These serial proofs of service leave lingering questions regarding when the order denying Appellant's PCRA petition was actually transmitted by the PCRA court, and those questions are not susceptible to easy answers based on the record before us.

In these circumstances, we decline to quash Appellant's appeal as untimely due to the PCRA court's failure to follow the directives of Rule 908. *See Commonwealth v. Meehan*, 628 A.2d 1151, 1155 (Pa.Super. 1993) ("[W]e cannot say with certainty that the PCRA court's failure to follow the directives of Rule [908] had no effect on appellant's ability to perfect his appeal since he was incarcerated . . . ."). Although we are cognizant of the proscriptions of Pa.R.A.P. 105(b), which prevents this court from enlarging "the time for filing a notice of appeal," we are of the settled opinion that the PCRA court's service oversight, combined with the clerk's notation irregularities under Rule 114, constitute a breakdown in the trial court's processes, such that we may address Appellant's otherwise untimely appeal. *See Commonwealth v. Khalil*, 806 A.2d 415, 420-21 (Pa.Super. 2002) ("We are unable to ignore the failure of the trial court to inform Appellant of his appeal rights, and we are constrained to find that it was a breakdown in the processes of the trial court that cause Appellant's untimely appeal.").

- 6 -

Turning to the substance of Appellant's appeal, he raises a single issue for our review:

> Did the PCRA court err in denying Appellant's amended motion for [PCRA] relief where his counsel of record was ineffective by failing to listen to audio evidence of a recorded phone conversation prior to the start of trial which would have lead a reasonable counsel to advise the petitioner to accept the guilty plea?

Appellant's brief at 8. Our scope and standard of review in this context is well-established under Pennsylvania law: "In PCRA proceedings, an appellate court's scope of review is limited by the PCRA's parameters; since most PCRA appeals involve mixed questions of fact and law, the standard of review is whether the PCRA court's findings are supported by the record and free of legal error." *See Commonwealth v. Pitts*, 981 A.2d 875, 878 (Pa. 2009). With specific reference to Appellant's claims, we presume that counsel is effective, and Appellant bears the burden of proving otherwise. *See Commonwealth v. Bennett*, 57 A.3d 1185, 1195 (Pa. 2012). In order to prevail on his claims of attorney ineffectiveness, Appellant must establish that: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) the defendant has shown that he suffered prejudice as a result of counsel's lapse (*i.e.*, there is a reasonable probability that the result of the proceeding would have been different but for counsel's oversight). *See Bennett*, *supra* at 1195. If Appellant's claim of ineffectiveness fails under any element of this test, we may dispose of it on the basis of that prong, alone. *See Commonwealth v. Albrecht*, 720 A.2d 693, 701 (Pa. 1998).

Appellant's claim revolves around a recorded telephone conversation, in which the victim, who was incarcerated at the time the phone call was placed, admitted to his wife that his inability to identify Appellant at the preliminary hearing was a lie calculated to afford the victim an opportunity for vigilante retaliation, *i.e.*, "street justice". N.T. Trial, 2/24/12, at 125-29. In various submissions to both this Court and the PCRA court, Appellant has couched this claim in terms that assail trial counsel for allegedly failing to review this audio recording at all prior to trial. However, such recriminations are little more than misdirection: based upon our review of the certified record and testimonies, all parties appear to agree that trial counsel **did** review the at-issue recording ahead of trial. *See* N.T. Evidentiary Hearing, 4/24/18, at 9-10 (Appellant conceding that trial counsel either listened to the tape or reviewed a transcript before the first day of trial); N.T. Second Evidentiary Hearing, 5/21/18, at 10 (trial counsel stating that he listened to the call prior to trial).

Contrary to Appellant's averments, trial counsel not only listened to the audio recording before trial, but also explicitly discussed: (1) the potential impact that this evidence would have on Appellant's defense at trial, which primarily relied upon misidentification; and (2) the potential for Appellant to accept a favorable plea deal from the Commonwealth based on this new evidence. *See* N.T. Evidentiary Hearing, 4/24/18, at 36-37 (Appellant stating that trial counsel advised him to take the Commonwealth's plea offer on two

separate occasions); N.T. Evidentiary Hearing, 5/21/18, 6-12 (trial counsel detailing his discussion of the recorded call with Appellant).

More accurately stated, Appellant's claim on appeal is **not** that trial counsel failed to listen to the at-issue audio recording. Rather, Appellant's complaint is that trial counsel rendered ineffective assistance by failing to play the actual recording of the tape for Appellant before trial. **See** Appellant's brief at 10 ("[A]ppellant contends that a competent counsel would have made arrangements to play the recorded phone call so that Appellant could hear the actual contents of the call and not rely on counsel's second hand recounting of the contents."). Appellant argues that hearing the actual recording would have persuaded him to accept the Commonwealth's plea offer,[1] and that trial counsel's failure to play it for him somehow rendered Appellant's refusal to enter a guilty plea "unknowing" or "involuntary" for the purposes of his ineffectiveness claim. **See Commonwealth v. Rathfon**, 899 A.2d 365, 369 (Pa.Super. 2006) ("A criminal defendant has the right to effective counsel during a plea process as well as during trial. . . . The voluntariness of the plea

_____

[1] In relevant part, the Commonwealth offered Appellant a term of four to ten years on all charges, set to run concurrently to a separate sentence of five to ten years that Appellant was serving at the time (*i.e.*, Appellant would have served no additional jail time). After rejecting this offer, Appellant was ultimately sentenced to consecutive terms of imprisonment of ten to twenty years for aggravated assault and two and one-half to five years for violating the Pennsylvania Uniform Firearms Act, and a concurrent term of imprisonment of two and one-half to five years for possessing an instrument of crime.

depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.").

The PCRA court concluded that the claim did not merit relief because "[i]nforming [Appellant] of the contents of the tape and the implications for trial was sufficient to enable [Appellant] to make an informed, voluntary and intelligent decision regarding whether to change his mind, forego trial and accept the plea offer." Trial Court Opinion, 8/20/18, at 1 n.1. We discern no abuse of discretion or error of law in the PCRA court's denial of Appellant's petition.

From a factual standpoint, Appellant himself testified that he rejected trial counsel's entreaties to accept the Commonwealth's plea offer on multiple occasions. *See* N.T. First Evidentiary Hearing, 4/24/18, at 9-10, 36-37; N.T. Second Evidentiary Hearing, 5/21/18, 6-10.[2] Furthermore, the record similarly establishes that Appellant had full knowledge regarding the content and implications of the audio recording prior to trial,[3] and still chose to forego the plea offer in the hope of defeating the charges at trial based on the inconsistencies in the victim's testimony. *Id.*

_____

[2] Although trial counsel could not recall explicitly suggesting that Appellant accept the Commonwealth's proffered plea, Appellant recalled such conversations taking place on two separate occasions. *See* N.T. Evidentiary Hearing, 4/24/18, at 36-37.

[3] Appellant first became aware of the at-issue audio recording approximately ten months before trial. *See* N.T. Evidentiary Hearing, 4/24/18, at 7. Thereafter, trial counsel testified that he discussed the phone call and its potential consequences at least two weeks before trial. *See* N.T. Evidentiary Hearing, 5/21/18, at 7.

Trial counsel advised Appellant about the content of the audio recording and discussed the potential impact upon the case, and approached Appellant two separate times regarding the plea offer from the Commonwealth. Appellant offers no explanation how hearing the recording directly would have led to a different result than the one he chose based upon indirect knowledge of the contents of the recording. Accordingly, Appellant has failed to convince us that the PCRA court erred and that relief is due. ***Commonwealth v. Miner***, 44 A.3d 684, 688 (Pa.Super. 2012).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/24/19