J-S06010-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DAVID HARRINGTON | : | |
| | : | |
| Appellant | : | No. 1028 EDA 2020 |

Appeal from the PCRA Order Entered March 6, 2020
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0007927-2014

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DAVID HARRINGTON | : | |
| | : | |
| Appellant | : | No. 1029 EDA 2020 |

Appeal from the PCRA Order Entered March 6, 2020
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0007928-2014

BEFORE:   PANELLA, P.J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PANELLA, P.J.:               **FILED:  MAY 7, 2021**

David Harrington appeals from the orders[1] entered in the Philadelphia

County Court of Common Pleas, which denied his first petition filed under the

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] As will be discussed in detail below, the orders involved two related criminal dockets, CP-51-CR-0007927-2014 ("Docket No. 7927") and CP-51-CR-0007928-2014 ("Docket No. 7928").

Post Conviction Relief Act ("PCRA"), at 42 Pa.C.S.A. §§ 9541-9546.[2] Harrington seeks relief from an aggregate sentence of 26 to 52 years' incarceration, imposed on June 12, 2015, after he entered an open guilty plea at the two criminal dockets to two counts of attempted murder, two counts of aggravated assault, two counts of possession of an instrument of crime ("PIC"), three violations of the Uniform Firearms Act ("VUFA") (illegally possessing a firearm, carrying a firearm without a license, and carrying a firearm on the streets of Philadelphia), one count of unlawful restraint, and one count of terroristic threats.[3] On appeal, Harrington claims counsel was ineffective for causing him to enter into an involuntary guilty plea. For the reasons discussed below, we find the PCRA court properly denied Harrington relief and affirm.

Harrington's convictions stem from an incident that occurred on May 14, 2014, during which he forced his wife into the basement of their home at gunpoint, instructed her to tie her leg to a chair, and shot her numerous times in the head and chest area. **See** PCRA Court Opinion, 7/17/2020, at unnumbered 2. He left her in the basement and then drove to the home of his

---

[2] This Court, acting *sua sponte*, consolidated Harrington's appeals pursuant to Pa.R.A.P. 513 after considering the trial court dockets, notices of appeal, and criminal docketing statements filed at Docket Nos. 1028 EDA 2020 and 1029 EDA 2020, and the "Application for Establishment Of A Uniform Briefing Schedule," filed by counsel for Harrington. **See** Order, 8/17/2020.

[3] 18 Pa.C.S.A. §§ 901(a), 2702(a), 907(a), 6105(a) 6106(a)(1), 6108, 2902(a)(1), and 2706(a)(1), respectively.

wife's purported boyfriend and shot that individual in the left eye. ***See id.***, at unnumbered 3. Harrington subsequently went to a bridge in a nearby area and threw the gun into the river. ***See id.*** Harrington later turned himself into the police and gave a full, inculpatory statement, in which he admitted to shooting his wife five times, shooting her paramour one time in the eye, and then throwing the gun in the water. ***See id.*** Both victims survived the shootings.

Harrington was charged at two separate but related criminal dockets: (1) Docket No. 7927 concerned the purported boyfriend of Harrington's wife and (2) Docket No. 7928 addressed Harrington's wife.

As noted above, Harrington pled guilty to numerous crimes related to the shootings on April 10, 2015. On June 12, 2015, the court imposed consecutive sentences of 12 ½ to 25 years of imprisonment on each attempted murder conviction. The court merged one of the PIC counts into the other and sentenced Harrington to a term of two and a half to five years' incarceration to run concurrent to the attempted murder sentences. It imposed a concurrent sentence of five to ten years' imprisonment on one VUFA count. Additionally, the court imposed one to two years' incarceration on the unlawful restraint conviction to run consecutive to the attempted murder sentences. It imposed no further penalty on the remaining counts. Harrington filed a post-sentence motion for reconsideration, which the trial court denied on July 16, 2015.

This Court affirmed his judgment of sentence on May 15, 2017.[4] **See Commonwealth v. Harrington**, 170 A.3d 1212 [2211 EDA 2015] (Pa. Super., filed May 15, 2017) (unpublished memorandum). Harrington did not file a petition for allowance of appeal with the Pennsylvania Supreme Court.

Subsequently, on February 16, 2018, Harrington filed this, his first, *pro se*, PCRA petition. Counsel was appointed, who filed an amended petition on November 1, 2019. In his petition, Harrington alleged his plea was unlawfully induced and trial counsel was ineffective for allowing him to enter an involuntary and unknowing plea. The PCRA court held an evidentiary hearing on March 6, 2020, and at the conclusion of the hearing, the court dismissed Harrington's PCRA petition.[5] This timely appeal followed.[6]

"Our standard of review for issues arising from the denial of PCRA relief is well-settled. We must determine whether the PCRA court's ruling is supported by the record and free of legal error." **Commonwealth v. Presley**, 193 A.3d 436, 442 (Pa. Super. 2018) (citation omitted), *appeal denied*, 201

---

[4] Harrington raised two claims on direct appeal that concerned the discretionary aspects of his sentencing.

[5] Three days later, the court entered an order reflecting its dismissal of Harrington's petition.

[6] On May 28, 2020, the PCRA court ordered Harrington to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Harrington filed a concise statement on June 11, 2020. The PCRA court issued an opinion pursuant to Pa.R.A.P. 1925(a) on July 17, 2020.

A.3d 154 (Pa. 2019). With the exception of the PCRA court's legal conclusions, our standard of review is deferential:

> We view the findings of the PCRA court and the evidence of record in a light most favorable to the prevailing party. With respect to the PCRA court's decision to deny a request for an evidentiary hearing, or to hold a limited evidentiary hearing, such a decision is within the discretion of the PCRA court and will not be overturned absent an abuse of discretion. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions.

***Commonwealth v. Mason***, 130 A.3d 601, 617 (Pa. 2015) (citations and quotation marks omitted).

In his sole issue on appeal, Harrington asserts counsel was ineffective for causing him to enter an involuntary and unknowing guilty plea based on numerous circumstances. ***See*** Appellant's Brief, at 14. First, he contends counsel never explained or asked "if [Harrington] understood the nature of the crimes, and [to] what he was pleading guilty[.]" ***Id.*** As a result, Harrington alleges he did not understand the nature of the attempted homicide charge insofar as he was unaware that the charge requires the Commonwealth prove he had a specific intent to kill the victims. ***See id.***

Additionally, Harrington complains that while counsel informed him of the total maximum sentence possible, counsel did not tell him that the sentence could be imposed consecutively, and this caused him "to enter a guilty plea unknowingly and unintelligently as is required by law." ***Id.*** Harrington states he thought his sentences would run concurrently, and that

counsel promised that he would receive a sentence of ten to 20 years if he pled guilty. *See id.*, at 14-15.

Lastly, Harrington alleges that because he has been diagnosed with clinical depression and bipolar affective disorder, counsel failed to advise him that a diminished capacity defense could lower the degree of guilt as to his attempted murder conviction from first degree to third degree. *See id.*, at 15-16. Harrington further claims that the diminished capacity defense would have demonstrated that he was incapable of forming the specific intent to kill. *See id.*, at 17. Harrington concludes that his claim of counsel's ineffective inducement of his guilty plea was of arguable merit, there was no reasonable basis to justify counsel's ineffectiveness, and he suffered actual prejudice as a result of counsel's actions.

We are guided by the following principles concerning a claim of ineffective assistance of counsel as to a guilty plea. We presume counsel is effective, and an appellant bears the burden to prove otherwise. *See Commonwealth v. Bennett*, 57 A.3d 1185, 1195 (Pa. 2012). The test for ineffective assistance of counsel is the same under both the Federal and Pennsylvania Constitutions. *See Strickland v. Washington*, 466 U.S. 668, 687-688, (1984); *Commonwealth v. Kimball*, 724 A.2d 326, 330-332 (Pa. 1999). An appellant must demonstrate: (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for

- 6 -

counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different. **See Commonwealth v. Solano**, 129 A.3d 1156, 1162-1163 (Pa. 2015). A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. **See id.**, at 1163.

Moreover, we note "[a] criminal defendant has the right to effective counsel during a plea process as well as during trial." **Commonwealth v. Rathfon**, 899 A.2d 365, 369 (Pa. Super. 2006) (citation omitted). Where, as here, Harrington pled guilty, in order to satisfy the prejudice requirement, he must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." **Id.**, at 370. Additionally, "[w]here the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends upon whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." **Commonwealth v. Hickman**, 799 A.2d 136, 141 (Pa. Super. 2002) (citation omitted) (internal quotation marks and citations omitted).

Furthermore, "[a] person who elects to plead guilty is bound by the statements he makes in open court while under oath and may not later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy." **Commonwealth v. Yeomans**, 24 A.3d 1044, 1047 (Pa. Super. 2011). Pennsylvania Rule of Criminal Procedure 590, "which pertains to procedures for entering pleas and plea agreements, requires pleas to be

entered in open court, and specifies that the trial judge must make inquiries, on the record, to determine whether the plea is voluntarily and understandingly tendered." **Commonwealth v. McGarry**, 172 A.3d 60, 66-67 (Pa. Super. 2017).

Lastly, this Court has held where the record clearly shows the court conducted a thorough plea colloquy and the defendant understood his rights and the nature of the charges against him, the plea is voluntary. **See Commonwealth v. McCauley**, 797 A.2d 920, 922 (Pa. Super. 2001). In examining whether the defendant understood the nature and consequences of his plea, we look to the totality of the circumstances. **See id.**

Here, the record belies Harrington's assertions. Harrington signed a written plea colloquy in which he acknowledged on the record that he understood the nature of the charges to which he was pleading guilty, he recognized the rights he was giving up, he was aware of the permissible range of sentences for the offenses for which he was charged, and that he was entering the plea knowingly, voluntarily, and intelligently. **See** Colloquy for Plea of Guilty, 4/10/2015 at 1. He averred that counsel had informed him of the elements of the crimes that the Commonwealth must prove to convict him, and that he could go to jail for up to 65 years and be fined $60,000 for the crimes. **See** Written Guilty Plea Colloquy, 4/10/2015, at 1. Additionally, Harrington indicated there was "no plea bargain of any kind, except that the District Attorney promised to drop the charges of all others" and no one

promised him anything if he pled guilty. *Id.* Moreover, Harrington confirmed that he was satisfied with the advice and service that he received from his counsel. *See id.*, at 3.

At the plea hearing, the court informed Harrington of his constitutional right to have a jury trial, and Harrington acknowledged that he understood this right. *See* N.T., 4/10/2015, at 5. The court then asked the Commonwealth to provide the factual basis for the offenses and Harrington confirmed that those were the facts to which he was pleading guilty. *See id.*, at 6-9. The court also inquired if Harrington went over the colloquy forms with counsel and did counsel provide him with an opportunity to ask questions so that he understood the contents of the documents, to which Harrington replied in the affirmed. *See id.*, at 10. Additionally, Harrington stated he was under the influence of some medication, a drug called Lamictal,[7] on the day of the hearing, but indicated that he understood everything that was happening, he was clear-headed, and he was pleading guilty in a knowing, intelligent, and voluntary manner. *See id.*, at 10-11. Lastly, Harrington again confirmed that he was satisfied with counsel's representation. *See id.*, at 11.

Furthermore, at the PCRA hearing, which was limited to the issue of whether there was a promise made by counsel to Harrington concerning the

---

[7] Harrington indicated that he suffers from bipolarism and clinical depression.

length of his sentence, Harrington provided an on-the-record statement, in which he averred, in relevant part:

> [Counsel] had persuaded me by coercive actions by visiting me 15 times over the course of a year…. [Counsel] always said he was checking on me and getting me off the block for a moment. Each of these times he was coaching me on what to say and do in court, and even how to answer the Court's questions, and I will receive a 10 to 20 year sentence. Each time [counsel's] confidence grew in the sentence, so did mine. **As my mental health began to improve, I began to realize there was no negotiated plea of 10 to 20 years** that I assumed that … was where the confidence came in.

N.T., 3/6/2020, at 8-9 (emphasis added).

When Harrington was asked about his assertion that counsel promised he would receive a sentence of ten to twenty years, the following exchange took place:

> [The Commonwealth]. And it is your testimony today that he promised you would get 10 to 20 years?
>
> [Harrington]. Over the course of that time in the visits, that [was not] his communications to me.
>
> THE COURT: It was or was not?
>
> [Harrington]: It was not his communication to me.
>
> THE COURT: Okay.
>
> [Harrington]: The one time that he did promise me -- or excuse me. The time that he used the word "I promise," was … prior to the sentence when I learned some stuff -- I'm not sure if you remember. I learned some stuff from the law library, and I tried to present it to you. So when I met with him back here prior to us coming out, he was upset about me presenting this information to you. So … he got upset because I kind of sprung it on him that this is what I wanted to do. And he used some choice words. And

then he said -- after the choice words, he said he had to come to speak to you.

Once he came back, his attitude was a little different, and I don't want to say that he was kind of begging me, but it was in that context that he was like, Please, do not take that stuff out there. Please do not take that stuff out there. Please do not do that. I promise you, I will get you 10 to 20. I am going to get you 10 to 20.

*Id.*, at 12-13.

Moreover, when asked if Harrington remembered being questioned if there was any deal in place at the time of sentencing, he answered in the negative. *See id.*, at 16. He did not remember making a similar allegation in his earlier on-the-record statement at the hearing. *See id.*

Harrington's counsel also took the stand at the PCRA hearing. Counsel testified he had been a licensed attorney since 2005, and a public defender since 2008. *See id.*, at 18. He indicated he has never promised a set term of incarceration to a defendant who was in the process of entering into an open guilty plea. *See id.*, at 19. Counsel stated that Harrington vacillated between pleading guilty and going to trial but noted that Harrington had turned himself into police and confessed to the shootings. *Id.*, at 22.

When specifically questioned about Harrington's plea and the possibility that he promised his client certain terms, counsel stated, "I don't remember doing that, but that seems very unlikely." *Id.*, at 19. Counsel testified that a ten-to-twenty-year sentence may have been discussed as Harrington's desire or request. *See id.*, at 24. However, counsel pointed out that he issued a

sentencing memorandum, requesting an aggregate term of 15 to 30 years' imprisonment, which led him to believe that he informed Harrington that the lower sentence was not "realistic." *Id.* Counsel stated that to the best of his recollection, he told Harrington prior to the guilty plea that he was going to recommend a sentence of 15 to 30 years. *See id.*, at 25. Counsel also indicated he advised Harrington that the court could have accepted or rejected his recommendation as there was no guarantee with an open plea. *See id.*, at 28. Lastly, counsel testified he was aware that Harrington had suffered with depression at a number of points in his life. *See id.*, at 23.[8]

In its opinion, the PCRA court found counsel's testimony to be credible because "it was corroborated by the guilty plea colloquy signed by [Harrington] at the time of the plea and by trial counsel's sentencing memorandum which requested a sentence of 15 to 30 years." PCRA Court Opinion, 7/17/2020, at unnumbered 6. Furthermore, the court determined counsel's "advice pertaining to [Harrington]'s guilty plea to be within the range of competence demanded of attorneys in criminal cases." *Id.*

Based on the record, we can find no fault in the PCRA court's conclusion that Harrington did not demonstrate his decision to enter into the open guilty plea to numerous crimes, including attempted murder, was unknowingly,

---

[8] At the time of the PCRA hearing, Harrington testified that he was on a "medication vacation" and was taking time away from medicine to see if he could try to "maintain [himself] without it." N.T., 3/6/2020, at 11.

involuntarily, and unintelligently made. Harrington is bound by the sworn statements he made at the hearing and on the written colloquy form, including his declarations that he had been fully advised of all statutory elements for each crime, that he was aware of the permissible sentencing ranges of the crimes for which he was pleading guilty, that his medication did not prohibit him from entering a knowing, intelligent, and voluntary plea, and that he had no reservations with counsel's representation. **See Yeomans**, 24 A.3d at 1047.

Moreover, counsel's testimony at the PCRA hearing, which the court found credible, supports the determination that Harrington was adequately apprised of the sentence counsel was recommending in addition to the maximum sentence he could receive, and that he was not guaranteed a particular sentence. Likewise, as indicated by the PCRA court, counsel's actions were supported by a reasonable basis designed to effectuate Harrington's interests. **See Solano**, 129 A.3d at 1162-1163. Therefore, because the PCRA court's findings of fact are supported by the record, and its resulting legal conclusions are correct, Harrington's allegations of ineffective assistance of plea counsel fail. Accordingly, we affirm the order denying Harrington PCRA relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/7/21