J-S12028-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                   :          PENNSYLVANIA
                                   :
             v.                       :
                                   :
ELIAZAR GONZALEZ               :
                                   :
          Appellant        :     No. 1546 MDA 2022

Appeal from the PCRA Order Entered October 6, 2022
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0003065-2020

BEFORE:   KUNSELMAN, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY McCAFFERY, J.:       **FILED AUGUST 11, 2023**

Eliazar Gonzalez (Appellant) appeals from the order entered in the Berks County Court of Common Pleas, which dismissed his timely, first petition under the Post-Conviction Relief Act (PCRA).[1] Appellant seeks relief from his August 23, 2021, judgment of sentence, following his negotiated guilty plea to three counts of possession with intent to deliver (PWID).[2] Appellant asserts counsel was ineffective at the time of his guilty plea and sentencing because counsel purportedly misrepresented the immigration consequences of his plea

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541–9546.

[2] 35 P.S. §§ 780-113(a)(30).

agreement. Upon careful review, we affirm on the basis of the PCRA court opinion.

On September 24, 2020, police officers executed a search warrant at a residence located on North 11th Street in Reading, Pennsylvania, where Appellant lived with his wife. *See* N.T., 8/23/21, at 5; N.T., 6/27/22, at 4, 30. The officers discovered 41 grams of cocaine, oxycodone pills, and suboxone. *See* N.T., 8/23/21, at 5. Appellant is a resident but not a citizen of the United States. *Id.* at 6.

Appellant was charged with three counts of PWID, possession of drug paraphernalia, and possession of an instrument of crime.[3] On August 23, 2021, at the conclusion of a hearing, Appellant entered a negotiated guilty plea to three counts of PWID. The trial court sentenced Appellant to an aggregate term of 11 1/2 months to 23 months' incarceration in the county prison.

Appellant did not file post-sentence motions or a direct appeal. Instead, on April 25, 2022, he filed a PCRA petition, alleging plea counsel, Robert J. Kirwan, Esquire, was ineffective because he failed to properly advise Appellant that his convictions would result in deportation and as a result, his guilty plea was unlawfully induced. *See* Appellant's Motion for Post-Conviction Collateral Relief, 4/25/22, at 2-7.

---

[3] 35 P.S. §§ 780-113(a)(16), (a)(32), and 18 Pa.C.S. § 907(c).

On June 27, 2022, the PCRA court held a hearing on the petition. At the hearing, Attorney Kirwan, Appellant's immigration counsel, Raymond G. Lahoud, Esquire, and Appellant all testified. The PCRA court summarized their testimony as follows:

1. On the date of the hearing on the [m]otion, June 27, 2022, Attorney Kirwan had worked as an attorney for 32 years. He estimated that approximately 90% of his practice had been in criminal law. During that time, he had represented well over 2,000 to 3,000 individuals with immigration issues.

2. Attorney Kirwan has practiced criminal law exclusively over the last five years.

3. Attorney Kirwan represented [Appellant] at his guilty plea and sentencing hearing in this case.

4. Attorney Kirwan met with [Appellant] on four or five occasions prior to the entry of [Appellant]'s guilty plea. When [Appellant] visited Attorney Kirwan, he was accompanied by his daughter-in-law, Maria Bravo. She interpreted the conversation between [Appellant] and Attorney Kirwan from English to Spanish and Spanish to English. Attorney Kirwan had known Ms. Bravo for approximately 10-15 years.

5. Attorney Kirwan informed [Appellant] that the criminal case against him would be difficult to win and was a weak case from a defense perspective.

6. During Attorney Kirwan's first meeting with [Appellant], [Appellant] informed him that he was a citizen of Mexico and was in the United States as a lawful permanent resident. Attorney Kirwan was aware that [Appellant]was not a United States citizen.

7. Attorney Kirwan and [Appellant] discussed the deportation consequences of a guilty plea. This discussion occurred during their third and fourth meetings together and prior to [Appellant]'s guilty plea. Attorney Kirwan informed [Appellant] that any drug charge would subject him to automatic deportation. He told [Appellant] that there were certain deportation waivers and exceptions but none of them applied to [him].

- 3 -

8. Attorney Kirwan told [Appellant] that he believed there was no way he would be able to prevent deportation but, since he [was not] an immigration lawyer, [Appellant] should consult with an immigration attorney to see if there would be a way that he could stay in the United States. Attorney Kirwan thought that an immigration attorney may be able to find a loophole in the law.

9. [Appellant]'s immigration attorney, Attorney Lahoud, testified that [Appellant]'s guilty plea subjected him to automatic deportation unless he could show that he would be persecuted in his home country based on his race, gender or political opinion. Attorney Lahoud stated that [Appellant] does not qualify for this exception.

10. Attorney Kirwan had no doubt that [Appellant] knew he would be deported as a result of his guilty plea.

11. Ms. Bravo passed away during Attorney Kirwan's representation of [Appellant]. One of [Appellant]'s family members, Evilier Mendoza, accompanied [Appellant] at subsequent meetings. Mr. Mendoza spoke fluent English and Spanish. He interpreted the conversations between [Appellant] and Attorney Kirwan from English to Spanish and Spanish to English.

12. Attorney Kirwan met with [Appellant] twice to discuss the Commonwealth's plea offer. The offer made to [Appellant] was for a state sentence, but Attorney Kirwan negotiated with the Commonwealth and they agreed to a county sentence.

13. Attorney Kirwan reviewed the written guilty plea colloquy with [Appellant] and gave him an explanation of each question he was required to answer. Mr. Mendoza was present and interpreted the conversation between Attorney Kirwan and [Appellant].

14. [Appellant] never told Attorney Kirwan that he had any mental illness.

15. [Appellant] used the services of an interpreter during his oral guilty plea colloquy.

16. During the oral guilty plea colloquy, th[e trial c]ourt informed [Appellant] that he would be subject to immigration review and deported as a result of his guilty plea.

17. [Appellant] signed a written guilty plea colloquy stating that he is not a United States citizen and that he understood that, by pleading guilty, he would be deported. He also stated that this was consistent with the advice received from his lawyer. [Appellant] acknowledged that he initialed this portion of the guilty plea colloquy, Attorney Kirwan reviewed the colloquy with him and that he had no problem understanding Attorney Kirwan with the assistance of Mr. Mendoza.

18. During the sentencing hearing, Attorney Kirwan stated that there was a "very, very slim chance that [Appellant] would not be deported."

Findings of Fact & Conclusions of Law in Disposition of Appellant's Motion for Post-Conviction Collateral Relief, 10/6/22, at 3-6 (record citations omitted).

On October 6, 2022, the PCRA court denied Appellant's petition. Appellant then filed a timely, notice of appeal.[4]

Appellant presents the following six claims for our review:

Was [Appellant] deprived of effective assistance of counsel at the time of his guilty plea and sentencing when said counsel misrepresented the immigration consequences of [his] negotiated plea?

Appellant's Brief at 4.

_____

[4] Appellant timely complied with the PCRA court's directive to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On December 6, 2022, the PCRA court issued a statement in lieu of an opinion, in which it incorporated its reasons for denying relief as set forth in its October 6, 2022, Findings of Fact and Conclusions of Law. *See* Statement in Lieu of Opinion, 12/6/22, at 2.

Appellant complains that Attorney Kirwan was ineffective because counsel tendered "inaccurate advice" by stating there was a "very, very slim chance" that Appellant would not be deported. *See* Appellant's Brief at 21 (record citation & quotation marks omitted). Appellant states: "Attorney Kirwan knew there were no statutory exceptions that would prevent [his] deportation following a guilty plea to felony drug offenses, but continued to tell [Appellant] that a slim chance existed." *Id.* at 22. Moreover, Appellant asserts that Attorney Kirwan's "hope that immigration law changes in the future is not a competent basis upon which to advise a client." *Id.* He also maintains that counsel "compounded his inaccurate advice by referencing so-called 'hardship exceptions'" when "the only recognized exception to deportation premised on a conviction for a felony drug offense is a claim of persecution in one's home country on the basis of race, gender, or political opinion." *Id.* at 23 (record citations omitted).

Separately, Appellant contends that his "ability to comprehend Attorney Kirwan's inaccurate advice [was] in question [based on his] limited grasp on the English language[.]" Appellant's Brief at 24 (record citations omitted).[5]

_____

[5] Appellant also alleges he was unable to understand Attorney Kirwan due to his "reported mental and physical disabilities." Appellant's Brief at 24. However, Appellant did not raise this assertion in his PCRA petition. *See* Appellant's Motion for Post-Conviction Collateral Relief, 4/25/22, at 1-7. As such, this claim is waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); *see also Commonwealth v. Reid*, 99 A.3d 470, 494 (Pa. 2014) (concluding issue
*(Footnote Continued Next Page)*

He states: "Neither the court, nor Attorney Kirwan inquired as to whether [Appellant]'s disability or his use of medication affected his ability to understand the guilty plea proceedings." *Id.* (record citation omitted).

Lastly, he claims the court's commentary at the time of his guilty plea hearing "only served to further cloud the issue." Appellant's Brief at 24. He points to the following statement made by the trial court: "And do you understand that by pleading guilty, you will be subject to immigration review which will result in your deportation?" N.T., 8/23/21, at 7. Appellant alleges "there is no process known as immigration review" and he "understood this to mean that officials from immigration would interrogate him and nothing more — based on the preceding inaccurate advice of counsel." Appellant's Brief at 24-25 (record citation & internal quotation marks omitted). In support of his argument, he references *Padilla v. Kentucky*, 559 U.S. 356 (2010),[6]

_____

not raised in a PCRA petition cannot be raised for the first time on appeal, but is, rather, waived for appellate review purposes).

[6] *See Padilla*, 559 U.S. at 374 (holding that failure of criminal defense attorney to advise their non-citizen client of immigration consequences of guilty plea constitutes constitutionally ineffective assistance of counsel).

*Commonwealth v. Escobar*, 70 A.3d 838, 840 (Pa. Super. 2013),[7] and

*Commonwealth v. Velazquez*, 216 A.3d 1146 (Pa. Super. 2019).[8]

Our standard regarding PCRA appeals is well-settled:

When reviewing the denial of a PCRA petition, an appellate court must determine whether the PCRA court's order is supported by the record and free of legal error. Generally, a reviewing court is bound by a PCRA court's credibility determinations and its fact-finding, so long as those conclusions are supported by the record. However, with regard to a court's legal conclusions, appellate courts apply a *de novo* standard.

*Commonwealth v. Drummond*, 285 A.3d 625, 633 (Pa. 2022) (footnotes & quotation marks omitted).

Because Appellant's claim concern ineffective assistance of counsel, we also are guided by the following:

To prevail on a claim of ineffective assistance of counsel, a PCRA petitioner must satisfy the performance and prejudice test set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This Court has recast the two-part *Strickland* standard into a three-part test by dividing the performance element into two distinct components. To prove that counsel was ineffective, the petitioner must demonstrate: (1) that the underlying claim has arguable merit; (2) that no reasonable basis existed for counsel's actions or failure to act; and (3) that the petitioner suffered prejudice as a result of

_____

[7] *See Escobar*, 70 A.3d at 842 (holding plea counsel effective where defendant's drug-related conviction, while a deportable offense, did not guarantee deportation; therefore, counsel's advice that there was a strong risk of deportation was sufficient).

[8] *See Velazquez*, 216 A.3d at 1151 (holding counsel's representation of defendant was constitutionally deficient where counsel made no assurance that the specific charge to which defendant pleaded guilty was a deportable offense).

- 8 -

counsel's error. To prove that counsel's chosen strategy lacked a reasonable basis, a petitioner must prove that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. To satisfy the prejudice prong, a petitioner must demonstrate that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction. Counsel is presumed to be effective; accordingly, to succeed on a claim of ineffectiveness the petitioner must adduce sufficient evidence to overcome this presumption.

**Drummond**, 285 A.3d at 634 (footnotes & quotation marks omitted). We further note: "Failure to satisfy any prong of the test will result in rejection of the appellant's ineffective assistance of counsel claim." **Commonwealth v. McGarry**, 172 A.3d 60, 70 (Pa. Super. 2017) (citation omitted).

Upon our review of the record, the parties' briefs, and the relevant case law, we conclude the PCRA court thoroughly addressed and properly disposed of Appellant's arguments in its October 6, 2022, Findings of Fact and Conclusions of Law. **See** Findings of Fact & Conclusions of Law in Disposition of Appellant's Motion for Post-Conviction Relief, 10/6/22, at 9-15 (concluding: (1) Appellant did not establish Attorney Kirwan provided ineffective advice regarding the deportation consequences of his guilty plea because (a) Attorney Kirwan "informed [Appellant] that a guilty plea would result in his deportation and advised him to consult with an immigration attorney,"[9] (b) Appellant "signed a written guilty plea colloquy where he acknowledged that

---

[9] **See** Findings of Fact & Conclusions of Law in Disposition of Appellant's Motion for Post-Conviction Relief at 9.

- 9 -

he was not a United States citizen, understood he would be deported as a result of his plea and confirmed that this information was consistent with the advice provided by" counsel,[10] (c) Appellant is bound by the statements he made in the plea colloquies and at the oral plea colloquy, he "acknowledged that Attorney Kirwan had reviewed the written guilty plea colloquy with him and he had no problem understanding Attorney Kirwan with the assistance of Mr. Mendoza[,]"[11] and (d) Attorney Kirwan's statement regarding Appellant's "slim chance of avoiding deportation was further evidence of his compliance with the requirements of **Padilla** and **Escobar**[;]"[12] (2) his claim that he was unable to comprehend Attorney Kirwan's advice because his limited understanding of the English language was unavailing because at the oral plea colloquy, Appellant utilized the services of an interpreter and stated that he understood all of the questions being asked by the court and counsel and "he had no problem understanding Attorney Kirwan through Mr. Mendoza[,]" and therefore, he is bound by that statement;[13] (3) his assertion that the court

---

[10] **See id.** at 9-10.

[11] **See id.** at 10. **See also Commonwealth v. Jamison**, 284 A.3d 501, 506 (Pa. Super. 2022) (stating "defendant is bound by the statements which he makes during his plea colloquy and cannot assert challenges to his plea that contradict his statements when he entered the plea.").

[12] **See id.** at 10.

[13] **See id.** at 13-14.

failed to conduct a complete guilty plea by only stating that he would be subject to an "immigration review" had no merit because (a) the court was under no obligation to ensure that he was aware of the immigration consequences of his guilty plea and (b) Appellant did not explain how this statement had an impact on his guilty plea and therefore, he failed to establish that he was prejudiced by this comment.[14]).  Accordingly, we affirm on the PCRA court's well-reasoned basis disposing of Appellant's allegations.

As such, we conclude the PCRA court properly denied Appellant relief on his ineffective assistance of counsel claim, we affirm the October 6, 2022, order.  We further direct the parties to attach of copy of the PCRA court's October 6, 2022, Findings of Fact and Conclusions of Law to all future filings of this memorandum.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/11/2023

---

[14] **See id.** at 14-15.  **See also Commonwealth v. Rachak**, 62 A.3d 389, 395 (Pa. Super. 2012) ("While the United States Supreme Court has recognized that lawyers have a responsibility to inform clients of potential immigration consequences before entering a guilty plea, it has not . . . placed the same responsibility on the courts.").

COMMONWEALTH OF PENNSYLVANIA    :   IN THE COURT OF COMMON PLEAS
                                                    :   OF BERKS COUNTY, PENNSYLVANIA
                                                    :   CRIMINAL DIVISION
                                                    :
              v.                               :   No.   CP-06-CR- 3065-2020
                                                    :
ELIAZAR GONZALEZ                       :   Assigned to: M. Theresa Johnson, J.

Sara Moyer, Esquire
*Attorney for Petitioner*

Alisa Hobart, Esquire
*Attorney for the Commonwealth*

## FINDINGS OF FACT AND CONCLUSIONS OF LAW IN DISPOSITION OF THE DEFENDANT'S MOTION FOR POST-CONVICTION COLLATERAL RELIEF

### PROCEDURAL HISTORY

The defendant in the above-captioned case, Eliazar Gonzalez ("Gonzalez"), was charged with possession with intent to deliver a controlled substance (3 counts), possession of a controlled substance (3 counts), possession of drug paraphernalia and possessing instruments of crime arising out of an incident alleged to have occurred on September 24, 2020. On August 23, 2021, Gonzalez entered a negotiated guilty plea to three counts of possession with intent to deliver a controlled substance. He was sentenced to serve an aggregate sentence of 11½ months to 23 months in Berks County Prison followed by 4 years of probation. No appeal was filed.

On April 25, 2022, Gonzalez, by and through counsel, filed a Motion for Post-Conviction Collateral Relief ("Motion"), pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. §9541 *et seq*. A hearing was held on June 27, 2022, regarding the Motion. At that time, Gonzalez, Raymond Lahoud, Esquire ("Attorney Lahoud") and Gonzalez's guilty plea counsel, Robert Kirwan, II, Esquire ("Attorney Kirwan"), were called to testify.

1

## PCRA JURISDICTION AND TIMELINESS

The disposition of the Motion is governed by the PCRA and the corresponding decisional law that has developed from the PCRA and its predecessor, the Post-Conviction Hearing Act. The PCRA "provides for an action by which persons convicted of crimes they did not commit and persons serving illegal sentences may obtain collateral relief." 42 Pa.C.S.A. §9542. In order to qualify for relief pursuant to the PCRA, a petitioner must plead and prove by a preponderance of the evidence that he or she has been convicted of a crime under the laws of this Commonwealth and is at the time relief is granted:

(i) currently serving a sentence of imprisonment, probation or parole for the crime;

(ii) awaiting execution of a sentence of death for the crime; or

(iii) serving a sentence which must expire before the person may commence serving the disputed sentence. 42 Pa.C.S.A. §9543(a)(1).

The petitioner must also prove by a preponderance of the evidence the existence of a defect in his or her conviction or sentence as set forth in 42 Pa.C.S.A. §9543(a)(2) and that the allegation of error has not been previously litigated or waived. 42 Pa.C.S.A. §9543(a)(2)(3).

A petitioner seeking PCRA relief must satisfy the PCRA's time requirements in filing his or her petition. A PCRA petition must be filed within one (1) year of the date the judgment becomes final unless the petitioner can prove the existence of one of the listed exceptions to this requirement set forth in 42 Pa.C.S.A. §9545(b)(1)(i)-(iii). 42 Pa.C.S.A. §9545(b)(1). The exceptions to the PCRA one-year statute of limitations are as follows: 1) the claim was not raised by the petitioner due to interference by government officials, 2) petitioner did not know the facts upon which his claim rests and had no ability to learn of them, or 3) a constitutional right has been recognized by the United States Supreme Court or the Supreme Court of Pennsylvania and

2

it has been applied retroactively. *Id.* In the event an exception applies, a petitioner must file his or her petition within one year from the date the claim could have been presented. 42 Pa.C.S.A. §9545(b)(2).

> [I]f a PCRA petition is not filed within one year of the date that the judgment of sentence becomes final; or is not eligible for one of the three limited statutory exceptions to the timeliness requirement; or is entitled to one of the exceptions, but the exception is not asserted within [one year from] the date that the claim could have been brought; then the court has no jurisdiction to address the substantive merits of the petition. *Commonwealth v. Carr*, 768 A.2d 1164, 1168 (Pa. Super. 2001) (citation omitted); 42 Pa.C.S.A. §9545(b)(2).

In the case at bar, Gonzalez entered his guilty plea on August 23, 2021, and was ordered to serve an aggregate sentence of 11½ months to 23 months in Berks County Prison followed by 4 years of probation. Gonzalez's sentence became final on September 22, 2021. Gonzalez had one year from the date his judgment of sentence became final, September 22, 2022, to file a PCRA petition. Gonzalez's Motion was timely as it was filed on April 25, 2022.

## FINDINGS OF FACT

1. On the date of the hearing on the Motion, June 27, 2022, Attorney Kirwan had worked as an attorney for 32 years. He estimated that approximately 90% of his practice had been in criminal law. During that time, he had represented well over 2,000 to 3,000 individuals with immigration issues.

2. Attorney Kirwan has practiced criminal law exclusively over the last five years.

3. Attorney Kirwan represented Gonzalez at his guilty plea and sentencing hearing in this case.

3

4. Attorney Kirwan met with Gonzalez on four or five occasions prior to the entry of Gonzalez's guilty plea. When Gonzalez visited Attorney Kirwan, he was accompanied by his daughter-in-law, Maria Bravo. She interpreted the conversation between Gonzalez and Attorney Kirwan from English to Spanish and Spanish to English. Attorney Kirwan had known Ms. Bravo for approximately 10-15 years.

5. Attorney Kirwan informed Gonzalez that the criminal case against him would be difficult to win and was a weak case from a defense perspective.

6. During Attorney Kirwan's first meeting with Gonzalez, Gonzalez informed him that he was a citizen of Mexico and was in the United States as a lawful permanent resident. Attorney Kirwan was aware that Gonzalez was not a United States citizen.

7. Attorney Kirwan and Gonzalez discussed the deportation consequences of a guilty plea. This discussion occurred during their third and fourth meetings together and prior to Gonzalez's guilty plea. Attorney Kirwan informed Gonzalez that any drug charge would subject him to automatic deportation. He told Gonzalez that there were certain deportation waivers and exceptions but none of them applied to Gonzalez.

8. Attorney Kirwan told Gonzalez that he believed there was no way he would be able to prevent deportation but, since he wasn't an immigration lawyer, Gonzalez should consult with an immigration attorney to see if there would be a way that he could stay in the United States. Attorney Kirwan thought that an immigration attorney may be able to find a loophole in the law.

9. Gonzalez's immigration attorney, Attorney Lahoud, testified that Gonzalez's guilty plea subjected him to automatic deportation unless he could show that he would be persecuted

4

in his home country based on his race, gender or political opinion. Attorney Lahoud stated that Gonzalez does not qualify for this exception.

10. Attorney Kirwan had no doubt that Gonzalez knew he would be deported as a result of his guilty plea.

11. Ms. Bravo passed away during Attorney Kirwan's representation of Gonzalez. One of Gonzalez's family members, Evilier Mendoza, accompanied Gonzalez at subsequent meetings. Mr. Mendoza spoke fluent English and Spanish. He interpreted the conversations between Gonzalez and Attorney Kirwan from English to Spanish and Spanish to English.

12. Attorney Kirwan met with Gonzalez twice to discuss the Commonwealth's plea offer. The offer made to Gonzalez was for a state sentence, but Attorney Kirwan negotiated with the Commonwealth and they agreed to a county sentence.

13. Attorney Kirwan reviewed the written guilty plea colloquy with Gonzalez and gave him an explanation of each question he was required to answer. Mr. Mendoza was present and interpreted the conversation between Attorney Kirwan and Gonzalez.

14. Gonzalez never told Attorney Kirwan that he had any mental illness.

15. Gonzalez used the services of an interpreter during his oral guilty plea colloquy.

16. During the oral guilty plea colloquy, this Court informed Gonzalez that he would be subject to immigration review and deported as a result of his guilty plea. Notes of Testimony, Guilty Plea and Sentencing Hearing, August 23, 2021 ("N.T."), at 7.

17. Gonzalez signed a written guilty plea colloquy stating that he is not a United States citizen and that he understood that, by pleading guilty, he would be deported. Statement Accompanying Defendant's Request to Enter a Guilty Plea, August 23, 2021, at 2. He

5

also stated that this was consistent with the advice received from his lawyer. *Id*. Gonzalez acknowledged that he initialed this portion of the guilty plea colloquy, Attorney Kirwan reviewed the colloquy with him and that he had no problem understanding Attorney Kirwan with the assistance of Mr. Mendoza. N.T. at 7-8.

18. During the sentencing hearing, Attorney Kirwan stated that there was a "very, very slim chance that [Gonzalez] would not be deported." N.T. at 9.

## CONCLUSIONS OF LAW

### Ineffective Assistance of Counsel - Generally

In order for a PCRA petitioner to succeed on an ineffective assistance of counsel claim, the PCRA petitioner must demonstrate that: "(1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice because of counsel's ineffectiveness." *Commonwealth v. Chmiel*, 30 A.3d 1111, 1127 (Pa. 2011) (citation omitted). "A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim." *Commonwealth v. Ali*, 10 A.3d 282, 291 (Pa. 2010) (citation omitted). "In order for [a petitioner] to prevail on a claim of ineffective assistance of counsel, he must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Commonwealth v. Rathfon*, 899 A.2d 365, 369 (Pa. Super. 2006) (citation omitted).

"A claim has arguable merit where the factual averments, if accurate, could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination." *Commonwealth v. Stewart*, 84 A.3d 701, 707 (Pa. Super. 2013) (citation and quotation marks omitted).

With regard to the second, reasonable basis prong, we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis. We will conclude that counsel's chosen strategy lacked a reasonable basis only if Appellant proves that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. To establish the third, prejudice prong, the petitioner must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's ineffectiveness. We stress that boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective.

*Chmiel, supra* at 1127-1128 (citations and quotation marks omitted).

"Appellant bears the burden of proving his counsel's ineffectiveness, for counsel's stewardship is presumed to be effective." *Commonwealth v. Thomas*, 539 A.2d 829, 837 (Pa. Super. 1988) (citation omitted). "[T]rial counsel cannot be found ineffective for electing not to raise [a] meritless claim." *Commonwealth v. Tilley*, 595 A.2d 575, 588 (Pa. 1991) (citations omitted).

"A criminal defendant has the right to effective counsel during a plea process as well as during trial." *Rathfon, supra* at 369 (citation omitted). "The voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Commonwealth v. Lynch*, 820 A.2d 728, 733 (Pa. Super. 2003) (citation and alterations omitted). "Therefore, allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused appellant to enter an

7

involuntary or unknowing plea." *Commonwealth v. Bedell*, 954 A.2d 1209, 1212 (Pa. Super. 2008) (citation, alteration and quotation marks omitted).

> Once a defendant has entered a plea of guilty, it is presumed that he was aware of what he was doing, and the burden of proving involuntariness is upon him. Therefore, where the record clearly demonstrates that a guilty plea colloquy was conducted, during which it became evident that the defendant understood the nature of the charges against him, the voluntariness of the plea is established.... Determining whether a defendant understood the connotations of his plea and its consequences requires an examination of the totality of the circumstances surrounding the plea.

*Commonwealth v. Moser*, 921 A.2d 526, 529 (Pa. Super. 2007) (citation omitted).

In order for a defendant to enter a knowing, intelligent and voluntary guilty plea, the defendant must understand the nature of the charges to which he is pleading; there must be a factual basis for the plea; the defendant must understand his right to have a trial by jury; the defendant must understand he is presumed innocent until found guilty; the defendant must be aware of the permissible ranges of sentences; and the defendant must be aware that the judge is not bound by the plea agreement unless the judge accepts it. *Commonwealth v. McCauley*, 797 A.2d 920, 922 (Pa. Super. 2001) (citation omitted).

A defendant "is bound by [his or her] statements made during a plea colloquy, and may not successfully assert claims that contradict such statements." *Commonwealth v. Muhammad*, 794 A.2d 378, 384 (Pa. Super. 2002) (citation omitted). "It is firmly established that a plea of guilty generally amounts to a waiver of all defects and defenses except those concerning the jurisdiction of the court, the legality of sentence, and the validity of the guilty plea." *Dalberto, supra* at 18 (citations and emphasis omitted).

8

## Ineffective Assistance of Counsel – Immigration Consequences of Gonzalez's Plea

Gonzalez claims that Attorney Kirwan was ineffective due to his failure to advise him of the immigration consequences of his guilty plea.

In *Padilla v. Kentucky*, 559 U.S. 356 (2010), the United States Supreme Court held "that counsel must inform a noncitizen defendant as to whether a plea carries a risk of deportation." *Commonwealth v. Escobar*, 70 A.3d 838, 841 (Pa. Super. 2013) (citing *Padilla*, *supra*).

> When the law [regarding deportation] is not succinct and straightforward…, a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear…the duty to give correct advice is equally clear. *Padilla*, *supra* at 369.

"It is quintessentially the duty of counsel to provide her client with available advice about an issue like deportation and the failure to do so clearly satisfies the first prong of the *Strickland* analysis." *Padilla*, *supra* at 371 (citation and quotation marks omitted).

In this case, Gonzalez believes that Attorney Kirwan was ineffective due to his failure to advise him that his guilty plea would result in the loss of any protected status as well as his removal and permanent bar from the United States. Gonzalez points to Attorney Kirwan's statement that there was a "very, very slim chance" that Gonzalez would not be deported as evidence of his ineffectiveness. However, this Court disagrees.

Here, Attorney Kirwan informed Gonzalez that a guilty plea would result in his deportation and advised him to consult with an immigration attorney. Gonzalez signed a written guilty plea colloquy where he acknowledged that he was not a United States citizen, understood

9

he would be deported as a result of his plea and confirmed that this information was consistent with the advice provided by Attorney Kirwan. During the oral guilty plea colloquy, Gonzalez was questioned about the written guilty plea colloquy. He acknowledged that Attorney Kirwan had reviewed the written guilty plea colloquy with him and he had no problem understanding Attorney Kirwan with the assistance of Mr. Mendoza. Gonzalez is bound by the statements he made in the plea colloquies and may not successfully assert claims that contradict them. *See Muhammad, supra.*

In support of his argument that Attorney Kirwan was ineffective, Gonzalez points out that Attorney Kirwan said, during sentencing, that there was a "very, very slim chance that [Gonzalez] would not be deported" even though Gonzalez's deportation was guaranteed N.T. at 9. However, in *Escobar, supra,* the Superior Court interpreted *Padilla* as requiring "counsel to inform a noncitizen defendant that there is a risk of deportation, not that deportation is a certainty." *Escobar, supra* at 841 (citation omitted). Here, Attorney Kirwan satisfied his obligation to Gonzalez when he informed him of his deportation risk. The statement Attorney Kirwan made during the sentencing hearing regarding Gonzalez's slim chance of avoiding deportation was further evidence of his compliance with the requirements of *Padilla* and *Escobar.* Therefore, Gonzalez's claim lacks arguable merit. He is not entitled to relief.

## Ineffective Assistance of Counsel - Gonzalez's Guilty Plea Colloquy

Gonzalez argues that Attorney Kirwan was ineffective when he failed to review Gonzalez's written guilty plea colloquy with him using a certified interpreter. The guilty plea colloquy was written in English, but Gonzalez avers that his primary language is Spanish and he had difficulty understanding the English language. Gonzalez claims that he was unable to read the guilty plea colloquy.

10

At Gonzalez's guilty plea and sentencing hearing, Gonzalez utilized the services of an interpreter. During that hearing, the following exchanges took place:

ATTY. LEHMAN: If I may refer you to the written colloquy Judge Johnson is holding (indicating), did you have a chance to go over that colloquy with your attorney?

GONZALEZ: Yes.

ATTY. LEHMAN: And did you have a chance to answer all of those questions with your attorney through the use of an interpreter?

GONZALEZ: Uh-huh, yes.

ATTY. LEHMAN: And have all of those questions been answered truthfully?

GONZALEZ: Yes.

ATTY. LEHMAN: And was that your signature on each of those three pages?

GONZALEZ: Yes.

...

THE COURT: The guilty plea paperwork that you completed, did you understand all of the questions?

GONZALEZ: Yes.

THE COURT: Do you have any questions about anything you're doing here today?

GONZALEZ: I just have to pay for my mistake.

THE COURT: Are you pleading guilty to the charges as stated by the Assistant District Attorney because you are guilty?

GONZALEZ: Yes.

11

| | |
|---|---|
| THE COURT: | And is anybody forcing you to plead guilty? |
| GONZALEZ: | No. |
| THE COURT: | And, sir, just to also go over here, you have checked off that you are not a citizen of the United states; is that correct? |
| GONZALEZ: | I'm just a resident. |
| THE COURT: | But you are not a citizen, right? |
| GONZALEZ: | No. |
| THE COURT: | And do you understand that by pleading guilty, you will be subject to immigration review which will result in your deportation? |
| GONZALEZ: | Yes, yes. |
| THE COURT: | Mr. Kirwan, do you want to ask him any other questions with respect to that issue? |
| ATTY. KIRWAN: | Mr. Gonzalez, on Paragraph No. 4 (indicating) where it talks about your immigration, is that your signature -- or your initials (indicating)? |
| GONZALEZ: | Yes. |
| ATTY. KIRWAN: | Now, would you acknowledge to the Court that you and I met with Evilier (phonetic) Mendoza in my office on at least two occasions? |
| GONZALEZ: | Yes. |
| ATTY. KIRWAN: | And did I go over this colloquy with Evilier and yourself -- |
| GONZALEZ: | Yes. |
| ATTY. KIRWAN: | -- sentence by sentence, paragraph by paragraph? And I gave a copy -- |

12

GONZALEZ:        Um-hum, yes.

ATTY. KIRWAN:    I'm sorry. I gave a copy to take with you after the first meeting so you could review it at your convenience?

GONZALEZ:        Yes.

ATTY. KIRWAN:    Did you have any problem understanding what I was saying to you through the use of Evilier (phonetic)?

GONZALEZ:        No.

ATTY. KIRWAN:    I'm satisfied, Your Honor, that for the record I gave a copy of the executed agreement at the end. And at our prior meeting, I gave him a copy without his signature on it and directed him to take it with him to go over at his convenience however he wanted to or consult with an immigration lawyer. And then he came back a number of weeks later. And he signed the final copy of this agreement Saturday morning, a few days ago. I'm satisfied that he understood what he was signing. His English is not very good. But I'm confident that Miguel, who is present in the courtroom, interpreted accurately and correctly to him.

N.T. at 3-4, 6-8.

Here, Gonzalez stated that he reviewed the written guilty plea colloquy with Attorney Kirwan using the services of the interpreter. He stated that he understood all of those questions and that he answered them truthfully. He confirmed that Attorney Kirwan reviewed each sentence and paragraph with him and provided a copy for him to take along and review separately. Gonzalez stated that he had no problem understanding Attorney Kirwan through Mr.

13

Mendoza. When this Court specifically asked Gonzalez if he understood all of the questions in his guilty plea colloquy, Gonzalez responded with "yes." As set forth in *Muhammad, supra,* Gonzalez is bound by his statements confirming that he understood his written guilty plea colloquy and cannot successfully assert claims that contradict them. His claim lacks arguable merit.

Regarding Gonzalez's claim that Attorney Kirwan should have used a certified interpreter to review the written guilty plea colloquy, no relief is due. Gonzalez stated that he understood everything in his written guilty plea colloquy and that he reviewed that document with Attorney Kirwan and Mr. Mendoza. He had no problems understanding Attorney Kirwan through Mr. Mendoza. This Court notes that a certified court interpreter was present during Gonzalez's guilty plea and sentencing hearing. Therefore, this Court finds that Gonzalez has failed to demonstrate how the outcome of his guilty plea and sentencing hearing would have been different if a certified interpreter was present with Attorney Kirwan to review the written guilty plea colloquy with Gonzalez and, accordingly, has failed to establish the requisite element of prejudice. He is not entitled to relief.

## Guilty Plea Colloquy

Gonzalez argues that this Court failed to conduct a complete guilty plea colloquy and, therefore, his plea was not knowingly and voluntarily made. Specifically, Gonzalez claims that this Court failed to ensure that Gonzalez was aware of the immigration consequences of his guilty plea and sentence but, instead, told Gonzalez that he would be subject to immigration review which will result in his deportation. Gonzalez states that there is no formal process known as "immigration review" and that it was the Court, not Attorney Kirwan, that provided this information to Gonzalez.

14

As to Gonzalez's claim that this Court failed to make sure that he was aware of the immigration consequences of his plea and sentence, this Court directs Gonzalez to the following statement by the Superior Court in *Commonwealth v. Rachak*, 62 A.3d 389, 395 (Pa. Super. 2012):

> Although *Padilla* effectively ended the categorization of immigration consequences as "collateral," it did not saddle courts with the responsibility of determining if every defendant before them is a United States citizen before accepting a guilty plea. Just as the court is ignorant of a defendant's criminal history and whether or not a guilty plea will result in a parole or probation violation, it is ignorant of a defendant's citizenship status and whether or not a guilty plea will result in deportation. While the United States Supreme Court has recognized that lawyers have a responsibility to inform clients of potential immigration consequences before entering a guilty plea, it has not, as of this date, placed the same responsibility on the courts.

*Rachak, supra* at 395. Therefore, this Court was under no obligation to ensure that Gonzalez was aware of the immigration consequences of his guilty plea. His claim lacks arguable merit.

Gonzalez also states that this Court told him that he would be subject to "immigration review" and deported but that there is no formal process known as "immigration review." However, Gonzalez has failed to establish how this had any impact on his guilty plea. To establish prejudice, Gonzalez must demonstrate how the outcome of his guilty plea and sentencing hearing would have been different if this Court had not made that statement. He has failed to do so. He is not entitled to relief.[1]

---

[1] This Court notes that the United States Department of Justice created the Executive Office for *Immigration Review* on January 9, 1983, and it is the primary mission of that office to adjudicate immigration cases by fairly,

15

## CONCLUSION

For the foregoing reasons, this Court concludes that Gonzalez has failed to demonstrate

any basis upon which to grant relief under the PCRA and, therefore, the Motion must be

**DENIED.**

---

expeditiously, and uniformly interpreting and administering the Nation's immigration laws.
https://www.justice.gov/eoir/about-office (last visited on September 22, 2022) (emphasis added). Under delegated
authority from the Attorney General, the Executive Office for Immigration Review conducts immigration court
proceedings, appellate reviews, and administrative hearings. *Id.*